## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SLATER BRENNAN, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>LATCH, INC. f/k/a TS INNOVATION ACQUISITIONS CORP., LUKE SCHOENFELDER, GARTH MITCHELL, and BARRY SCHAEFFER,<br><br>                    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Slater Brennan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Latch, Inc. ("Latch" or the "Company") f/k/a TS Innovation Acquisitions Corp. ("TSIA") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Latch; and (c) review of other publicly available information concerning Latch.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Latch securities between May 13, 2021 and August 25, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Latch is an enterprise technology company that offers a full-building operating system, LatchOS, to address the essential requirements of modern buildings. It offers modules for delivery and guest management, as well as smart home and sensors. On or about June 3, 2021, Latch became a public entity via business combination with TSIA (the "Business Combination").

3.      On August 25, 2022, after the market closed, Latch revealed that it would restate financial statements for 2021 and the first quarter of 2022 due to revenue recognition errors related to the sale of hardware devices. Specifically, the Company stated that "certain revenue recognition errors occurred as a result of unreported sales arrangements due to sales activity that was inconsistent with the Company's internal controls and procedures."

4.      On this news, Latch's stock fell $0.13, or 12.2%, to close at $0.95 per share on August 26, 2022, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there were unreported sales arrangements related to hardware devices; (2) that, as a result, the Company had improperly recognized revenue throughout fiscal 2021 and first quarter 2022; (3) that there were material weaknesses in Latch's internal control over financial reporting related to revenue recognition; (4) that, as a result of the foregoing, Latch would restate financial statements for fiscal 2021 and first quarter 2022; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein,

including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11. Plaintiff Slater Brennan, as set forth in the accompanying certification, incorporated by reference herein, purchased Latch securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Latch is incorporated under the laws of Delaware with its principal executive offices located in New York, NY. Latch's common stock trades on the NASDAQ exchange under the symbol "LTCH," and its warrants trade on the NASDAQ exchange under the symbol "LTCHW."

13. Defendant Luke Schoenfelder ("Schoenfelder") was Latch's Chief Executive Officer ("CEO") at all relevant times.

14. Defendant Garth Mitchell ("Mitchell") was Latch's Chief Financial Officer ("CFO") since prior to the Business Combination until March 28, 2022.

15. Defendant Barry Schaeffer ("Schaeffer") has served as the Interim CFO since March 28, 2022.

16. Defendants Schoenfelder, Mitchell, and Schaeferr (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to

3

control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.   Latch is an enterprise technology company that offers a full-building operating system, LatchOS, to address the essential requirements of modern buildings. It offers modules for delivery and guest management, as well as smart home and sensors. On or about June 3, 2021, Latch became a public entity via business combination with TSIA (the "Business Combination").

### Materially False and Misleading
### Statements Issued During the Class Period

18.   The Class Period begins on May 13, 2021. On that day, the Company filed its prospectus / proxy statement on Form 424b3 soliciting stockholder approval of the Business Combination. It reported that the following material weaknesses existed in Latch's internal control over financial reporting:

> Latch has identified material weaknesses in its internal control over financial reporting that Latch is currently working to remediate, which relate to: (a) Latch's general segregation of duties, including the review and approval of journal entries; (b) the lack of a formalized risk assessment process; and (c) selection and development of control activities, including over information technology.

Latch's management has concluded that these material weaknesses in Latch's internal control over financial reporting are due to the fact that Latch is a private company with limited resources and does not have the necessary business processes and related internal controls formally designed and implemented coupled with the appropriate resources with the appropriate level of experience and technical expertise to oversee Latch's business processes and controls.

Latch's management is in the process of developing a remediation plan. The material weaknesses will be considered remediated when Latch's management designs and implements effective controls that operate for a sufficient period of time and management has concluded, through testing, that these controls are effective. Latch's management will monitor the effectiveness of its remediation plans and will make changes management determines to be appropriate.

If not remediated, these material weaknesses could result in material misstatements to Latch's annual or interim consolidated financial statements that might not be prevented or detected on a timely basis, or in delayed filing of required periodic reports.

19.    On June 9, 2021, Latch announced its first quarter 2021 financial results in a press release that stated, in relevant part:

*$ in thousands*

| | Three months ended March 31, | | | |
| | 2021 | 2020 | $ Change | % Change |
|---|---|---|---|---|
| Revenue | $6,629 | $2,726 | $3,903 | 143% |
| Cost of revenue (1) | $6,162 | $3,262 | $2,900 | 89% |
| Operating expenses (1) | $31,714 | $15,345 | $16,369 | 107% |
| Other expenses (2) | $6,854 | $60 | $6,794 | NM |
| | | | | |
| GAAP net loss | $(38,101) | $(15,941) | $(22,160) | (139%) |

NM: Not meaningful

20.    On August 12, 2021, Latch announced its second quarter 2021 financial results in a press release that stated, in relevant part:

*$ in thousands (unaudited)*

|  | Three months ended June 30, | | | |
|---|---|---|---|---|
|  | 2021 | 2020 | $ Change | % Change |
| Revenue | $ 9,012 | $ 2,752 | $ 6,260 | 227% |
| Cost of revenue | $ 8,242 | $ 3,239 | $ 5,003 | 154% |
| Operating expenses | $ 22,726 | $ 14,082 | $ 8,644 | 61% |
| Other expenses (1) | $ 18,105 | $ 417 | $ 17,688 | NM |
| GAAP net loss | $ (40,071) | $ (14,986) | $ (25,085) | (167%) |

21.   On August 13, 2021, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2021, affirming the previously reported financial results. . It also stated that the Company's "disclosure controls and procedures were not effective" due to the previously disclosed material weaknesses.

22.   On November 9, 2021, Latch announced its third quarter 2021 financial results in a press release that stated, in relevant part:

*$ in thousands (unaudited)*

|  | Three months ended September 30, | | | |
|---|---|---|---|---|
|  | 2021 | 2020 | $ Change | % Change |
| Revenue | $ 11,197 | $ 5,095 | $ 6,102 | 120% |
| Cost of revenue | $ 11,153 | $ 5,890 | $ 5,263 | 89% |
| Operating expenses | $ 34,391 | $ 14,657 | $ 19,734 | 135% |
| Other income (expense) (1) | $ 108 | $ (422) | $ 530 | 126% |
| GAAP net loss | $ (34,239) | $ (15,874) | $ (18,365) | (116%) |

23.     On November 10, 2021, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2021, affirming the previously reported financial results. It also stated that the Company's "disclosure controls and procedures were not effective" due to the previously disclosed material weaknesses.

24.     On February 24, 2022, Latch announced its fourth quarter 2021 financial results in a press release that stated, in relevant part:

*$ in thousands (unaudited)*

| | Three months ended December 31, | | | |
|---|---|---|---|---|
| | 2021 | 2020 | $ Change | % Change |
| Revenue | $ 14,522 | $  7,488 | $  7,034 | 94% |
| Cost of revenue | $ 18,481 | $  7,848 | $ 10,633 | 135% |
| Operating expenses | $ 57,059 | $ 15,535 | $ 41,524 | 267% |
| Other income (expense) (1) | $  7,110 | $ (3,298) | $ 10,408 | 316% |
| GAAP net loss | $(53,908) | $(19,193) | $(34,715) | (181%) |

25.     On March 1, 2022, Latch filed its annual report on Form 10-K for the period ended December 31, 2021 (the "2021 10-K"), affirming the previously reported financial results. Regarding the Company's revenue recognition policy for hardware, the 2021 10-K stated, in relevant part:

*Hardware and Other Related Revenue*

We generate hardware revenue primarily from the sale of our portfolio of devices for our smart access and smart apartment solutions. We sell hardware to building developers directly or through our channel partners who act as the intermediary and installer. We recognize hardware revenue when the hardware is shipped directly to

building developers or to our channel partners, which is when control is transferred to the building developer.

We provide warranties that our hardware will be substantially free from defects in materials and workmanship for a period of one year for electronic components and five years for mechanical components. We replace, repair or refund warrantable devices at our sole discretion.

We determined these warranties are not separate performance obligations as they cannot be purchased separately and do not provide a service in addition to an assurance the hardware will function as expected. We record a reserve as a component of cost of hardware revenue based on historical costs of replacement units for returns of defective products. Due to our limited operating history, our ability to forecast future operating results, including the estimation of product returns, may differ materially from actual results. We also provide certain customers a wholesale arrangement with a right of return for non-defective products, which is treated as a reduction of hardware revenue based on our expectations and historical experience.

We also generate revenues related to hardware, which includes professional services related to installation and activation of hardware devices sold to building developers. These services are recognized over time on a percentage of completion basis.

26.    The 2021 10-K also reported Latch's remediation progress with respect to previously disclosed material weaknesses in its internal control over financial reporting:

Management identified material weaknesses in our internal control over financial reporting for the periods ended December 31, 2020 and 2019. The material weaknesses relate to: (a) general segregation of duties, including the review and approval of journal entries; (b) lack of a formalized risk assessment process; (c) selection and development of control activities, including over information technology related to certain account balances; and (d) accounting for complex financial instruments (as further described below). Management has concluded that these material weaknesses in internal control over financial reporting were due to the fact that (i) with respect to weaknesses (a), (b) and (c), we were a private company with limited resources and did not have the necessary business processes and related internal controls formally designed and implemented, coupled with the appropriate resources with the appropriate level of experience and technical expertise, to oversee our business processes and controls, and (ii) with respect to weakness (d), we had limited resources and did not have the appropriate resources, with the appropriate level of experience and technical expertise, to oversee the accounting for complex accounting transactions.

*        *        *

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this Report. In making this evaluation, management considered the material weaknesses in our internal controls over financial reporting described above. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, our disclosure controls and procedures were not effective.

We have implemented substantial remediation efforts as described below. As such, weaknesses (a), (b) and (d) as noted above have been addressed. Remediation efforts are still ongoing for weakness (c) regarding the development and effectiveness of control activities, and we are on target to remediate this material weakness during the year ended December 31, 2022. Remediation efforts to date include the following:

- We strengthened our compliance and accounting functions with additional experienced hires to address evaluation of technical accounting matters, as well as added headcount to address general segregation of duties. System controls have been implemented, tested and determined to be effective pertaining to review and approval of journal entries. As such, management believes that components (a) and (d) of the material weaknesses identified above have been remediated as of December 31, 2021.

- We performed a formalized financial and fraud risk assessment and subsequently selected and designed internal control activities, including over information technology. As such, management believes that component (b) of the material weaknesses identified above has been remediated as of December 31, 2021.

- We performed full-scope testing and assessed the effectiveness of our financial and information technology control activities. While substantial progress was made broadly, further action and additional testing in certain areas is required before we can conclude full remediation.

- We continue to be engaged with external consultants with public company and technical accounting experience to facilitate accurate and timely accounting closes and to accurately prepare and review the financial statements and related footnote disclosures. We plan to retain these financial consultants, as needed, until such time that the required financial controls have been fully implemented.

27.     On May 5, 2022, Latch announced its first quarter 2022 financial results in a press release that stated, in relevant part:

### Key Business Metrics and Select Financial Metrics

- **Software Revenue**: Software revenue for the three months ended March 31, 2022 was $3.0 million, up 88% compared to $1.6 million for the same period in 2021.

- **Total Revenue**: Total revenue for the three months ended March 31, 2022 was $13.7 million, up 106% compared to $6.6 million for the same period in 2021.

- **ARR**: ARR for the three months ended March 31, 2022 was $7.9 million, up 137% compared to $3.3 million for the same period in 2021.

- **Spaces**: Spaces for the three months ended March 31, 2022 was 126,746, up 129% compared to 55,305 for the same period in 2021.

- **Net Loss**: Net loss for the three months ended March 31, 2022 was $44.2 million, up 16% compared to $38.1 million during the same period in 2021.

- **Adjusted EBITDA**: Adjusted EBITDA for the three months ended March 31, 2022 was $(36.8) million, down 165% compared to $(13.9) million during the same period in 2021. Please see below for a reconciliation of Adjusted EBITDA to our closest GAAP metric, net loss, as well as a discussion of why we view Adjusted EBITDA as an important metric.

28.     The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2022, affirming the previously reported financial results. The report also stated that the previously disclosed material weakness in its internal control over financial reporting had not been remediated. With respect to its revenue recognition policy, Latch stated, in relevant part:

> The Company generates hardware revenue primarily from the sale of its portfolio of devices for its smart access and smart apartment solutions. The Company sells hardware to building developers directly or through its channel partners who act as the intermediary and installer. The Company recognizes hardware revenue when the hardware is shipped directly to building developers or to its channel partners, which is when control is transferred to the building developer.

29.     On August 10, 2022, Latch filed a notice of inability to timely file its quarterly report on Form 10-Q for the period ended June 30, 2022 due to an internal investigation into revenue recognition practices. The Company stated, in relevant part:

Latch, Inc. (the "Company") is unable to file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2022 (the "Quarterly Report") without unreasonable effort or expense within the prescribed time period. The Audit Committee of the Company's Board of Directors has commenced an investigation (the "Investigation") of alleged current and prior period matters that include, but may not be limited to, certain aspects of the Company's current and historic key performance indicators and revenue recognition practices, including the accounting treatment, financial reporting and internal controls related thereto. As the Investigation includes matters related to accounting for the quarter ended June 30, 2022, the Company is unable to file the Quarterly Report at this time.

Following the completion of the Investigation, the timing of which cannot be estimated, the Company will make a determination regarding whether any revision, correction or restatement of its financial statements for any previous quarter or fiscal year will be made, as well as the timing of filing the Quarterly Report.

30.    The above statements identified in ¶¶ 18-29 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that there were unreported sales arrangements related to hardware devices; (2) that, as a result, the Company had improperly recognized revenue throughout fiscal 2021 and first quarter 2022; (3) that there were material weaknesses in Latch's internal control over financial reporting related to revenue recognition; (4) that, as a result of the foregoing, Latch would restate financial statements for fiscal 2021 and first quarter 2022; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

31.    On August 25, 2022, after the market closed, Latch revealed that it would restate financial statements for 2021 and the first quarter of 2022 due to revenue recognition errors related to the sale of hardware devices. Specifically, the Company stated that "certain revenue recognition errors occurred as a result of unreported sales arrangements due to sales activity that was

inconsistent with the Company's internal controls and procedures." Specifically, in a Form 8-K

filed with the SEC, Latch stated, in relevant part:

> As previously disclosed by Latch, Inc. (the "Company") on August 10, 2022, the Audit Committee of the Company's Board of Directors (the "Audit Committee") has commenced an investigation (the "Investigation") of possible current and prior period matters that include, but may not be limited to, certain aspects of the Company's current and historic key performance indicators and revenue recognition practices, including the accounting treatment, financial reporting and internal controls related thereto.

> While the Investigation is ongoing, on August 19, 2022, based on the preliminary findings of the Investigation, the Audit Committee determined that the Company's consolidated financial statements for 2021 included in the Company's Annual Report on Form 10-K for the year ended December 31, 2021 and associated report of the Company's independent registered public accounting firm, Deloitte & Touche LLP ("Deloitte"), *as well as the Company's consolidated financial statements for the first quarter of 2022 included in the Company's Quarterly Report on Form 10-Q for the three months ended March 31, 2022, should no longer be relied upon as a result of material errors and possible irregularities relating to, among other things, the manner in which the Company recognized revenue associated with the sale of hardware devices during 2021 and the first quarter of 2022.* Accordingly, the Audit Committee, in consultation with the Company's management, has determined that the Company's consolidated financial statements for 2021 and the first quarter of 2022 will be restated.

> Based on the preliminary findings of the Investigation, *certain revenue recognition errors occurred as a result of unreported sales arrangements due to sales activity that was inconsistent with the Company's internal controls and procedures.* The Company's management is assessing the effect of the matters identified to date and the restatement on the Company's internal control over financial reporting and its disclosure controls and procedures. Although the assessment is not yet complete, the review is likely to result in one or more material weaknesses in the Company's internal control over financial reporting during the applicable periods.

> While the Audit Committee believes the errors identified to date affect only the 2021 and first quarter 2022 consolidated financial statements based on the preliminary findings of the Investigation, the Investigation remains ongoing, and it is possible that the Audit Committee, in consultation with the Company's management, will determine that additional errors, including errors that may affect additional periods, could be identified. As a result, the Audit Committee has not determined whether financial statements for any other periods include errors or possible irregularities or the amounts of any required adjustments to the Company's previously reported financial statements for such periods. Following the completion of the Investigation, the Company will file amended periodic reports for any periods requiring restatement.

32.     On this news, Latch's stock fell $0.13, or 12.2%, to close at $0.95 per share on August 26, 2022, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Latch securities between May 13, 2021 and August 25, 2022, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Latch's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Latch shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Latch or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Latch; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39.     The market for Latch's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Latch's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Latch's securities relying upon the integrity of the market price of the Company's securities and market information relating to Latch, and have been damaged thereby.

40.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Latch's securities, by publicly issuing false and/or misleading statements

and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.   The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Latch's business, operations, and prospects as alleged herein.

41.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.   As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Latch's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43.     During the Class Period, Plaintiff and the Class purchased Latch's securities at artificially inflated prices and were damaged thereby.   The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Latch, their control over, and/or receipt and/or modification of Latch's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Latch, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

45.     The market for Latch's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Latch's securities traded at artificially inflated prices during the Class Period.   On September 15, 2021, the Company's share price closed at a Class Period high of $14.40 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Latch's securities and market information relating to Latch, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of Latch's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about Latch's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Latch and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for Latch's securities was an efficient market for the following reasons, among others:

(a)     Latch shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Latch filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Latch regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Latch was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for Latch's securities promptly digested current information regarding Latch from all publicly available sources and reflected such

information in Latch's share price. Under these circumstances, all purchasers of Latch's securities during the Class Period suffered similar injury through their purchase of Latch's securities at artificially inflated prices and a presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker

had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Latch who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Latch's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Latch's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Latch's financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Latch's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Latch and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Latch's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Latch's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Latch's securities during the Class Period at artificially high prices and were damaged thereby.

59.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems

that Latch was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Latch securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

62.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.    Individual Defendants acted as controlling persons of Latch within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements

alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, Latch and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: August 31, 2022

By:  */s/ Gregory B. Linkh*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Slater Brennan*

## SWORN CERTIFICATION OF PLAINTIFF

## LATCH, INC. SECURITIES LITIGATION

I, Slater Brennan, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Latch, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Latch, Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.


8/30/2022                                        _Slater Brennan_
_____            _____
        Date                                          Slater Brennan

**Slater Brennan's Transactions in Latch, Inc. (LTCH)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 2/25/2022 | Bought | 2,530 | $3.9000 |
| 4/6/2022 | Bought | 27 | $3.8600 |
| 5/5/2022 | Bought | 127 | $3.1800 |
| 6/8/2022 | Bought | 57 | $1.7500 |
| 6/16/2022 | Bought | 86 | $1.3100 |
| 6/22/2022 | Bought | 74 | $1.3300 |
| 6/28/2022 | Bought | 86 | $1.1600 |