**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SLATER BRENNAN, Individually and on behalf of
all others similarly situated,

Plaintiff,

v.

LATCH, INC. f/k/a TS INNOVATION
ACQUISITIONS CORP., LUKE SCHOENFELDER,
GARTH MITCHELL, and BARRY SCHAEFFER

Defendants.

Case No. 1:22-cv-07473-JGK

ORAL ARGUMENT
REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR**
**VIOLATION OF THE FEDERAL SECURITIES LAWS**

## TABLE OF CONTENTS

I.     Introduction ............................................................................................................1

II.    Background ............................................................................................................3

    A.   Latch's Full-Building Operating System Revolutionizes the Building Experience for Owners and Residents ...........................................................3

    B.   Latch Goes Public and Provides Detailed Disclosures About Its Revenue Recognition Practices ...................................................................................4

    C.   Latch Warns Investors That Revenue Reporting Requires Significant Judgment, and Suffers and Discloses a Weakness in Internal Controls ................5

    D.   Latch Announces Plans to Restate Financial Statements .........................................7

III.   Plaintiff Fails to Plead a Section 10(**b**) Claim ...................................................8

    A.   Plaintiff Lacks Standing to Challenge Revenue Statements Made About a Different Company ....................................................................................9

    B.   Plaintiff Fails to Plead a False or Misleading Statement .........................................9

        1.   The Statements About Revenue Reporting and Recognition Were Not False ...................................................................................10

            a.   Plaintiff Does Not Plead Objective Falsity ....................................11

                (1)   The Mere Fact of a Proposed Restatement Does Not Establish That Defendants' Revenue Statements Were Objectively False ....................................11

                (2)   The CW Allegations Do Not Establish Objective Falsity ....................................12

             b.   Plaintiff Does Not Plead Subjective Falsity ....................................15

        2.   The Statements About Internal Controls Were Not False .........................16

        3.   The Statements of Corporate Optimism Are Not Actionable ....................18

    C.   Plaintiff Fails to Plead a Strong Inference of Scienter ...........................................18

        1.   Plaintiff Alleges a Motiveless Fraud .........................................................18

        2.   Plaintiff Fails to Plead Strong Circumstantial Evidence of Fraud as to Any Individual Defendant .........................................19

        3.   Plaintiff Fails to Plead Strong Circumstantial Evidence of Fraud as to Latch ...........................................................................21

        4.   The Far More Compelling Inference Is Good Faith, Not Fraud ...............21

IV.    Plaintiff Fails to Plead a Section 20(a) Claim ...................................................22

V.     Conclusion ............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
  2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) .................................................. 10, 11, 15, 16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ................................................................................. 22

*Campo v. Sears Holdings Corp.*,
  371 F. App'x 212 (2d Cir. 2010) ........................................................................ 14

*In re Carlotz, Inc. Sec. Litig.*,
  2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) ..................................................... 9

*Chen v. X Fin.*,
  2021 WL 7449851 (E.D.N.Y. Dec. 9, 2021) ....................................................... 20

*In re Citigroup Sec. Litig.*,
  2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ..................................................... 16

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
  540 F. Supp. 2d 464 (S.D.N.Y. 2008) ................................................................. 20

*City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*,
  2019 WL 452051 (S.D.N.Y. Feb. 5, 2019) ......................................................... 18

*Cox v. Blackberry Ltd.*,
  660 F. App'x 23 (2d Cir. 2016) ....................................................................... 2, 20

*Dalberth v. Xerox Corp.*,
  766 F.3d 172 (2d Cir. 2014) ............................................................................... 17

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
  2017 WL 4049253 (S.D.N.Y. June 28, 2017), *aff'd sub nom. Sfiraiala v. Deutsche Bank
  Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018) ............................................. 17

*In re DRDGOLD Ltd. Sec. Litig.*,
  472 F. Supp. 2d 562 (S.D.N.Y. 2007) ................................................................. 22

*In re Eargo, Inc. Sec. Litig.*,
  2023 WL 1997918 (N.D. Cal. Feb. 14, 2023) ..................................................... 10

*ECA Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) .......................................................................... 11, 18

*In re EDAP TMS S.A. Sec. Litig.*,
  2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) .................................................... 11

*Finger v. Pearson PLC*,
    2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019) ............................................................... 16

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018) ............................................................................ 13

*Gavish v. Revlon, Inc.*,
    2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004) ...................................................... 11, 14, 15

*In re Gen. Elec. Sec. Litig.*,
    844 F. App'x 385 (2d Cir. 2021) .................................................................................... 19

*In re Iconix Brand Grp., Inc.*,
    2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017) ................................................................ 15

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ................................................................................ 18, 19, 21

*Kasilingam v. Tilray, Inc.*,
    2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021) .............................................................. 20

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015)................... 12

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ................. 14

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
    518 F. Supp. 3d 772 (S.D.N.Y. 2021) .......................................................................... 19

*Menora Mivtachim Insurance Ltd. v. Frutarom Indus. Ltd.*,
    54 F.4th 82 (2d Cir. 2022) .............................................................................................. 9

*In re Nokia Corp. Sec. Litig.*,
    2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021)............................................................... 17

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ........................................................................................... 11, 15, 16

*In re Plug Power, Inc. Sec. Litig.*,
    2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) .............................................................. 15

*Plumbers & Pipefitters Loc. Union No. 719 Pension Tr. Fund v. Conseco Inc.*,
    2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011).............................................................. 22

*Plumbers & Steamfitters Loc. 137 Pension Fund v. Am. Express Co.*,
    2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017) ................................................................ 8

*Robeco Cap. Growth Funds SICAV–Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*,
    2023 WL 2711342 (S.D.N.Y. Mar. 30, 2023)............................................................... 13

*Rok v. Identiv, Inc.*,
  2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom. Cunningham v. Identiv, Inc.*, 716 F. App'x
  663 (9th Cir. 2018) ................................................................................................................. 17

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ..................................................................................................... 8

*Russo v. Bruce*,
  777 F. Supp. 2d 505 (S.D.N.Y. 2011) ..................................................................................... 18

*In re Sanofi Sec. Litig.*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016) ..................................................................................... 16

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) ............................................................................................. 18, 21

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
  365 F.3d 353 (5th Cir. 2004) ................................................................................................... 11

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
  2011 WL 1253250 (D. Ariz. Mar. 31, 2011) ........................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................................. 3, 18

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011) ..................................................................................... 19

*Woolgar v. Kingstone Cos.*,
  477 F. Supp. 3d 193 (S.D.N.Y. 2020) ................................................................... 12, 13, 16, 17, 20

*In re Xinhua Fin. Media, Ltd. Sec. Litig.*,
  2009 WL 464934 (S.D.N.Y. Feb. 25, 2009) ........................................................................... 18

## STATUTES

15 U.S.C. § 78u-4 ..................................................................................................................... 8, 18

## RULES

Fed. R. Civ. P. 9 .............................................................................................................................. 8

## OTHER AUTHORITIES

Acct. Standards Codification Topic
  606-10-25 ............................................................................................................................. 5, 10
  606-10-55 ............................................................................................................................. 5, 10

## GLOSSARY

The following terms are used in this memorandum:

| Term | Definition |
|------|------------|
| ¶ | All paragraph cites are to the Amended Complaint |
| AC or Amended Complaint | Amended Consolidated Class Action Complaint for Violations of Federal Securities Law, filed October 24, 2023, Dkt. 55 |
| Appendix A | Appendix A, filed with the Declaration of Kristin N. Murphy, listing in tabular format statements challenged by Plaintiff |
| ASC 606 | Accounting Standard Codification Topic 606 |
| CEO | Chief Executive Officer |
| CFO | Chief Financial Officer |
| Challenged Statements | Statements Plaintiff challenges as false or misleading, AC ¶¶ 72-94 |
| Class Period | May 13, 2021 through and including August 25, 2022 |
| CW(s) | Confidential Witness(es), as identified in the AC |
| Defendants | Latch, Inc., Luke Schoenfelder, Garth Mitchell, and Barry Schaeffer |
| Exchange Act | The Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et. seq.* |
| Ex(s). or Exhibit(s) | Exhibits attached to the Declaration of Kristin N. Murphy, filed concurrently, which are public filings and statements and are incorporated into the AC and/or subject to judicial notice |
| FY19, FY20, FY21, FY22 | Fiscal years, starting with fiscal year 2019 through fiscal year 2022 |
| GAAP | Generally Accepted Accounting Principles |
| Latch or the Company | Latch, Inc. |
| LOI(s) | Letter(s) of intent to purchase goods |
| Plaintiff | Lead Plaintiff VP PTC Establishment as Trustee of Gersec Trust |
| PSLRA | The Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77k, 77l, 77z-1, 77z-2, 78a, 78j-1, 78t, 78u, 78u-4, 78u-5 |
| SOX | The Sarbanes-Oxley Act of 2002 |
| TSIA | TS Innovation Acquisitions Corp. |

## I.    INTRODUCTION

When a public company announces its intention to restate financial results, securities class action lawsuits usually follow—even if there is no indication the company intended to deceive its investors.  That is what happened here.  On August 10, 2022, Latch, a New York-based company that revolutionized the multifamily smart-building industry through its full-building operating system, LatchOS, disclosed an investigation into its accounting for revenue recognition.  After this announcement, Latch's stock price *increased*.  Two weeks later, on August 25, 2022, Latch updated investors on its investigation and announced that it would restate its financial statements.  Latch's stock price fell slightly the next day, but by the time this lawsuit was filed six days later, the price had already recovered.  And just a few weeks later, it was *28% higher*.

On January 23, 2023, Latch announced it had substantially completed its investigation, which had been led by experienced external counsel under the Audit Committee's supervision.  Latch noted that unspecified revenue recognition errors occurred as a result of a failure by *some* sales personnel to report the terms of sales arrangements to which they agreed with *some* customers.  Latch confirmed it would restate financial statements for prior reporting periods.  Again, following this news, Latch's stock price *increased*.  While Latch has been working diligently over the past fourteen months to understand the scope and impact of the errors and to restate its financial statements, Latch has not yet issued a restatement.

Although Plaintiff claims that *every* Class Period filing overstated revenue, misrepresented Latch's revenue reporting practices, and/or omitted internal controls weaknesses, Plaintiff's claims are all based on a single alleged GAAP violation—that Latch violated ASC 606 by "recognizing revenue on LOIs and on hardware … without an actual change in control" (*e.g.*, ¶ 74)—which Plaintiff claims establishes securities fraud per se.  It does not, and the Amended Complaint falls

far short of meeting the PSLRA's rigorous and heightened standards to plead a federal securities fraud claim.

*First*, Plaintiff's challenge to Latch's reporting of revenue that its predecessor company derived as a *private company—i.e.*, statements made by a different company before Latch was created as a public company on June 4, 2021—must be dismissed.  Plaintiff did not hold stock in the pre-merger, private Latch and thus lacks standing to challenge statements made by or about the private company.

*Second*, Plaintiff does not allege a single fact showing Defendants' statements were knowingly false when made, or that Defendants' opinion statements about revenue, revenue reporting, and the effectiveness of internal controls are actionable.  Plaintiff's falsity assertions rest on (1) the mere fact of Latch's *post*-Class Period announcement of revenue recognition errors and a good-faith intention to correct them through restated financials, and (2) generic CW reports of allegedly improper sales practices.  As to the former, the mere need for a restatement is not an admission that prior accounting judgments were made with subjective knowledge of their falsity (as required to challenge opinion statements)—and an announced *intention to restate* is even further removed.  Plaintiff's lawsuit is precisely the type of "fraud by hindsight" theory that is "not permitted under the PSLRA."  *Cox v. Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016).  As for the CWs, not one is alleged to have had any involvement with, or insight into, Latch's revenue recognition practices during the Class Period—they all worked in sales or as an engineer.  None can speak to whether Latch complied with GAAP.  Plaintiff thus fails to allege any actionably false statements.

*Third*, Plaintiff fails entirely to meet its heavy burden to allege particularized facts giving rise to a strong inference of scienter—*i.e.*, that each Defendant acted with an "intent to deceive,

manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 319 (2007).  In the Amended Complaint's 135 paragraphs, Plaintiff alleges no evidence of motive. There are no allegations that any Defendant sold stock during the Class Period while employed at Latch, which is wholly inconsistent with fraudulent intent.  Nor does Plaintiff allege a single particularized fact showing Defendants knew (or were deliberately reckless in not knowing) Latch recognized revenue in violation of ASC 606 in each of its Class Period filings, yet allowed it to recognize the revenue anyway.  The Amended Complaint alleges nothing tying Schoenfelder, Mitchell, or Schaeffer to the receipt of any evidence contradicting the Challenged Statements at all.  Instead, Plaintiff offers speculative assertions of scienter based on "access" to data, "high-level executive[]" positions, and purported "participat[ion]" in Latch's revenue recognition practices (¶ 127).  But courts within this District routinely reject such generic and conclusory allegations, which fail to establish the requisite strong inference of scienter.  Indeed, upon learning of potential accounting errors, Defendants enhanced their controls, began an investigation, hired outside advisors, and promptly informed investors.  The only reasonable inference from the alleged facts is that Defendants undertook a conscious effort to investigate and fix potential errors—not that they deliberately aimed to deceive.  Plaintiff cannot state a claim for securities fraud.  The Amended Complaint should be dismissed.

## II.  BACKGROUND

### A.  Latch's Full-Building Operating System Revolutionizes the Building Experience for Owners and Residents

Latch is an enterprise technology company focused on revolutionizing how people experience spaces by making residential buildings more functional, accessible, and enjoyable for building owners, residents, and employees.  Ex. 1 at 5.  Latch was co-founded by Luke Schoenfelder in 2014 and created a full-building operating system called LatchOS, which

integrates hardware with software to virtually control door access, among other things.  ¶ 22.
Schoenfelder served as CEO throughout the Class Period before leaving Latch on January 11,
2023.  ¶ 18.  Garth Mitchell served as CFO until March 2022, at which time he was replaced by
Barry Schaeffer.  ¶¶ 18-20, 100.  Schaeffer left Latch in January 2023.  ¶ 20.

Within the LatchOS ecosystem, Latch sells hardware, software, and services.  ¶ 22.  Its
collection of hardware includes door-mounted access control products and the Latch Intercom, and
its suite of software includes Resident Mobile Applications, Manager Web, and Manager Mobile
Applications.  Ex. 1 at 8-9.  Latch historically contracted directly with building developers to
install LatchOS in their buildings for use by residents, or indirectly through channel partners, who
act as the intermediary between Latch and the developer.  *Id*. at 50.  Latch also works with other
leading smart home manufacturers, such as Google Nest and Honeywell, to ensure that LatchOS
is compatible with their smart home devices.  *Id*. at 9.

**B.     Latch Goes Public and Provides Detailed Disclosures About Its Revenue
         Recognition Practices**

On June 4, 2021, Latch, which was then a private company, merged with TS Innovation
Acquisitions Corp., a special purpose acquisition company, and began publicly trading on the
Nasdaq Stock Market LLC.  ¶ 23; Ex. 2.  In its Class Period filings, Latch described its business
and finances in detail, including extensive disclosures about the manner in which it recognizes
revenue. ¶ 25; *see also* Ex. 3 at 148-50; Ex. 1 at 75-77.  Among other things, Latch explained that
it derives revenue from sales of hardware, software (on a subscription basis), and services (related
to the installation of hardware) in accordance with ASC 606.  Ex. 1 at 57.

ASC 606 guides companies on when and how much revenue to recognize from contracts
with customers.  ¶ 46.  Under ASC 606-10-25-23, revenue is recognized when an asset or control
of an asset is transferred to the customer.  ¶ 52.  ASC 606 is inherently subjective, as it provides

guidance for an entity to consider in determining when a customer obtains control of an asset.  For example, ASC 606 allows companies to conclude that control is transferred when the company "has a present right to payment for the asset," or the customer has the "ability to direct the use of, and obtain substantially all of the remaining benefits."  ASC 606-10-25-30.  Companies "use judgment and consider … the entity's customary business practices and [their] knowledge of the customer" to make this determination.  ASC 606-10-55-3B.  Consistent with ASC 606, Latch recognized revenue on hardware sales when the product was "shipped … which is when control is transferred to the building developer."  Ex. 1 at 57.

Separately, Latch historically entered into non-binding LOIs with customers "specifying which software and devices they want to receive and on which dates."  Ex. 3 at 143; Ex. 1 at 6. Upon execution of an LOI, Latch had not yet shipped hardware to the customer, and so control had not been transferred.  Ex. 3 at 149; Ex. 1 at 49.  Thus, prospective sales under LOIs were not treated as revenue.  Instead, Latch reported such prospective sales under LOIs as a non-GAAP metric called "Total Bookings," which "measure[d] sales volume and velocity of [its] hardware and software products."  Ex. 1 at 49.  Latch presented Total Bookings under "Key Performance Indicators," which is a separate metric than "GAAP Measure[d]" revenue, and noted that "[t]here is no guarantee that the number of booked units will convert into actual deliveries" and thus revenue, "or will convert into deliveries within the timeframe we anticipate." *Id*. at 22, 49.  Latch relied on LOIs for "visibility" into "demand planning" and "forecasting."  *Id*. at 10; Ex. 3 at 137.

### C.    Latch Warns Investors That Revenue Reporting Requires Significant Judgment, and Suffers and Discloses a Weakness in Internal Controls

Recognizing revenue was not a straightforward process.  Latch acknowledged that the timing of revenue recognition, as well as the amount to recognize, was inherently a judgment call. *See* Ex. 3 at 156; Ex. 1 at 56.  For hardware, Latch historically recorded as revenue the amount it

expected to receive from the sale of its products and included potential costs associated with warranties—costs associated with returning defective hardware and, in certain circumstances, non-defective hardware—as a cost of revenue.  Ex. 3 at 157; Ex. 1 at 57.  Because Latch did not know ahead of time if it would be required to refund, replace, or repair a returned product, Latch was required to "record[] a reserve" for the costs associated with warranties "as a component of cost of hardware revenue," which it estimates "based on historical returns" and Latch's "expectations" of the likelihood that a product will be returned.  Ex. 3 at 157.  This was an inherently imprecise process involving a "great[] degree of judgment and complexity," Ex. 1 at 56, and Latch specifically warned that it could not guarantee its ability to accurately recognize revenue, noting that complying with GAAP "requires management to make estimates and assumptions that affect the reported amounts of … revenue and expenses," which could cause "[a]ctual results [to] differ from our estimates."  *Id.*; Ex. 3 at 156.

From the outset of its existence as a public company, Latch disclosed that it had "identified material weaknesses in [its] internal control over financial reporting" that "could result in a material misstatement of our annual or interim financial statements."  Ex. 1 at 24-25; Ex. 3 at 34.  Latch offered several reasons for this weakness.  First, before merging with TSIA and becoming a public company, Latch had not been required to document and test internal controls over financial reporting and its auditors had not been required to provide an "attestation report on our system of internal controls over financial reporting."  Ex. 1 at 61; Ex. 3 at 34, 161.  Second, and as a result, Latch lacked "the necessary business processes and related internal controls" and personnel with the "appropriate level of experience and technical expertise to oversee our business processes and controls."  Ex. 1 at 99; Ex. 3 at 34, 62.  Latch warned investors that it "cannot assure you that we will be able to fully remediate [the weaknesses], which could impair our ability to accurately and

timely meet our public company reporting requirements." Ex. 1 at 100. Latch continued to make similar disclosures in other Class Period filings. *E.g.*, Ex. 4 at 39.

Latch actively sought to remediate its disclosed internal controls weaknesses. Management worked diligently to "implement[] substantial remediation efforts," which included "engag[ing] with external consultants … to facilitate accurate and timely accounting closes and to accurately prepare and review the financial statements." *Id.* at 39. Latch warned, however, that these (or any newly identified) material weaknesses "could result in a material misstatement of our … financial statements." Ex. 1 at 25; Ex. 3 at 34. Despite management's good-faith efforts, the internal controls weaknesses remained throughout the Class Period, and Latch informed investors in each subsequent Class Period filing that its "[r]emediation efforts are still ongoing." *See, e.g.*, Ex. 4 at 39.

### D.   Latch Announces Plans to Restate Financial Statements

On August 10, 2022, Latch announced it had commenced an investigation into "certain aspects of the Company's current and historic key performance indicators," including "revenue recognition practices" and "internal controls related thereto." Ex. 5 at 2. Latch retained experienced external counsel to conduct the investigation under the Audit Committee's supervision. Ex. 6 at 2. Following this announcement, Latch's stock price increased 6%. Ex. 7.

Two weeks later, on August 25, 2022, Latch announced the preliminary findings of the investigation, noting that "certain revenue recognition errors occurred as a result of unreported sales arrangements." Ex. 8. Latch decided to restate each periodic financial statement dating back to the beginning of 2021. *Id.* On the day following this announcement, Latch's stock closed at $0.95 per share, a decline of 12.2%, but quickly rebounded to close almost 29% higher by mid-September 2022. ¶ 6; Ex. 7. This suit followed.

On January 23, 2023, Latch concluded its investigation, identifying "errors in the recognition of revenue" that impacted the "amount and timing of revenue to be recognized." Ex. 6 at 2. Latch confirmed that the errors were, in part, due to "certain sales personnel in certain cases" who had "fail[ed] … to disclose relevant terms they had negotiated with customers." *Id.* at 2. Latch resolved to restate its financial statements for FY19 and FY20. *Id.* Again, following this disclosure, Latch's stock price increased 2%. Ex. 7.

Plaintiff amended its complaint on October 20, 2023—before Latch issued any restatement.

## III.   PLAINTIFF FAILS TO PLEAD A SECTION 10(b) CLAIM

To state a Section 10(b) claim based on alleged misstatements or omissions, Plaintiff must plead (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Plumbers & Steamfitters Loc. 137 Pension Fund v. Am. Express Co*., 2017 WL 4403314, at *10 (S.D.N.Y. Sept. 30, 2017). Section 10(b) claims are subject to the strict and rigorous pleading requirements of Rule 9(b), which requires Plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Similarly, the PSLRA requires a plaintiff to "state with particularity" (1) "each act or omission alleged to violat[e]" Section 10(b); (2) the "reasons why" those statements or omissions are false or misleading; and (3) specific "facts giving rise to a strong inference" that each defendant acted with the required intent to defraud—*i.e.*, "scienter." 15 U.S.C. § 78u-4(b). Noncompliance with these rules mandates dismissal. 15 U.S.C. § 78u-4(b)(3).

A.   **Plaintiff Lacks Standing to Challenge Revenue Statements Made About a Different Company**

Plaintiff's challenge to statements discussing Latch's revenue reporting *before* Latch became a public company—*i.e.*, private Latch's announcement of FY19 and FY20 revenue in its May 2021 Prospectus and 1Q21 results on June 9, 2021 (App. A (Stmts. 1,2); ¶¶ 73, 75), and Schoenfelder's 1Q21 statement that Latch had a "strong start to the year" (App. A (Stmt. 3); ¶ 75)—fails at the outset because Plaintiff lacks statutory standing to challenge these statements. *See Menora Mivtachim Insurance Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 86 (2d Cir. 2022) (plaintiff lacks standing to sue company without trading its securities). Plaintiff says he holds, and seeks to represent a class of investors who purchased, Latch's "publicly traded common stock" between May 13, 2021, and August 25, 2022. ¶ 110. There was no publicly traded Latch common stock before June 4, 2021, when private Latch—a different company—merged with TSIA to create an entirely new company: public Latch. Ex. 2. Plaintiff concedes it never owned any shares in the private, *pre-merger* entity. *See* Dkt. 22-3 (alleging first stock purchase was September 28, 2021). With respect to statements concerning pre-merger Latch's revenue, neither Plaintiff nor any class of shareholders it purports to represent "bought or sold securities about which the misstatements were made" and "thus lack standing" to challenge them. *In re Carlotz, Inc. Sec. Litig.*, 2023 WL 2744064, at *4, 5 (S.D.N.Y. Mar. 31, 2023).

B.   **Plaintiff Fails to Plead a False or Misleading Statement**

Plaintiff alleges that in each Class Period filing, Defendants misrepresented (1) Latch's revenue and revenue recognition practices, and/or (2) the effectiveness of Latch's internal controls. ¶¶ 73-94. But the statements Plaintiff challenges were nonactionable accounting judgments or otherwise were not false and misleading at the time they were made. Additionally, Schoenfelder's

statements about Latch's "strong" results are classic puffery, which cannot form the basis for a claim of securities fraud.

### 1. The Statements About Revenue Reporting and Recognition Were Not False

Plaintiff challenges fourteen statements reporting revenue, including Schoenfelder's statements "tout[ing]" Latch's revenue (App. A (Stmts. 1-6, 8-10, 12-14, 17-18)), and two statements describing Latch's revenue recognition practices (*id.* (Stmts. 16, 19)). According to Plaintiff, these statements were false because Defendants "improperly recognized revenue" in violation of ASC 606. ¶¶ 76, 78, 80, 82, 84, 86, 88, 90, 94.

ASC 606 permits a company to recognize revenue from sales to customers when, among other things, it is "probable" the seller "will collect substantially all of the consideration to which it will be entitled." ASC 606-10-25-1. Management must "assess[] … whether the customer has the ability and intention to pay the consideration," which "requires" management "to use judgment and consider … the entity's customary business practices and its knowledge of the customer." ASC 606-10-25-1(e), 606-10-55-3B. Because this is a subjective standard based on management's *beliefs*, compliance with ASC 606 is a matter of opinion. *See In re Eargo, Inc. Sec. Litig.*, 2023 WL 1997918, at *7 (N.D. Cal. Feb. 14, 2023) ("ASC 606 tolerate[s] a range of reasonable treatments, leaving the choice among alternatives to management."); *In re AmTrust Fin. Servs., Inc. Sec. Litig.,* 2019 WL 4257110, at *24 (S.D.N.Y. Sept. 9, 2019) (revenue recognition statements were opinions). Revenue and revenue-recognition statements therefore can support falsity only if (1) the opinion is both incorrect (*i.e.*, objectively false) and not genuinely believed (*i.e.*, subjectively false), or if (2) the speaker "omits material facts" underlying the basis for the opinion and "those facts conflict with what a reasonable investor would take from the statement."

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015).  Plaintiff fails to plead falsity under *Omnicare*.

### a.  Plaintiff Does Not Plead Objective Falsity

Plaintiff's challenge to the revenue statements is based on (1) Latch's *post*-Class Period announcement that it intends to restate its financials, and (2) reports from former-employee CWs who had no involvement in Latch's revenue recognition process.  Neither challenge states a claim under well-settled law.  *E.g., ECA Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 200 (2d Cir. 2009) ("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.").

### (1)  The Mere Fact of a Proposed Restatement Does Not Establish That Defendants' Revenue Statements Were Objectively False

Plaintiff claims that Latch's revenue statements were per se rendered false and misleading because it announced an intention to restate its financials due to "certain revenue recognition errors."  ¶ 96.  But Defendants are not "strictly liable" for allegedly misstating subsequently restated financials where, as here, Plaintiff fails to plead a single fact (let alone particularized facts) showing the revenue statements were false *at the time they were made*.  *AmTrust,* 2019 WL 4257110, at *24 (revenue statements not rendered false by restatement); *see also In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, at *8 (S.D.N.Y. Sept. 14, 2015) ("[S]tatements that later turned out to be untrue, are not actionable.").

Moreover, Latch has not yet restated its financials, and Plaintiff cannot "explain how or in what particulars [Latch's] revenues figures were inaccurate."  *Southland Sec. Corp. v. INSpire Ins. Sols., Inc*., 365 F.3d 353, 370 (5th Cir. 2004).  Indeed, the Amended Complaint does not contain a single "allegation of monetary consequence at all, let alone one large enough to have been reflected in [Latch's] financial statements."  *Gavish v. Revlon, Inc.*, 2004 WL 2210269, at *16

(S.D.N.Y. Sept. 30, 2004); *see also In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 295 (S.D.N.Y. 2014) (restatement of "modest size … undercuts an inference of fraud"), *aff'd*, 616 F. App'x 442 (2d Cir. 2015).  Nor can Plaintiff show that Latch's forthcoming restatement has anything to do with the fraud alleged in the Amended Complaint, as opposed to some unrelated revenue recognition practice.  *See Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 2011 WL 1253250, at *27 (D. Ariz. Mar. 31, 2011) (no falsity where restatement was not linked to alleged fraud).  Here, Latch announced that it identified revenue recognition errors because "certain sales personnel in certain cases" "failed . . . to disclose relevant terms they had negotiated with customers."  Ex. 6 at 2.  That announcement has no connection with the alleged practices about which Plaintiff complains here.

### (2)    The CW Allegations Do Not Establish Objective Falsity

Without any articulation of precisely *how* Defendants' statements were false, Plaintiff attempts to fill the gap with reports from four anonymous CWs who allegedly observed that Latch "recognized revenue on LOIs" and "hardware that was moved to channel partners' facilities without an actual change in control" in violation of ASC 606.  *E.g.*, ¶¶ 34, 80.  But Plaintiff has not pled that any of these purported observations related to the reasons for Latch's forthcoming restatement.  And in any event, Plaintiff's allegations do not establish that any of these CWs were actually involved in the revenue recognition process.  Where a plaintiff "relies on allegations from confidential witnesses, as here, those sources must be 'described in the complaint with sufficient particularity to support the probability" that they "would possess the information alleged.'" *Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 218-19 (S.D.N.Y. 2020).  No such allegations exist here:  "*none* of the CWs [is] alleged to have specific experience with or knowledge of the Company's" revenue recognition practices—let alone knowledge of whether any Defendant was

involved in, or had knowledge of, these practices. *Id*. Just the opposite, CW1, CW2, and CW4 all worked in sales, whereas CW3 worked as an engineer during the Class Period. ¶¶ 28, 30, 32, 41.

Their reports are unreliable for other reasons, too. *First*, Plaintiff alleges, based on CW1's "belie[f]," that Latch "recognized revenue on LOIs before conversion into actual sales." ¶ 34. But CW1 did not work in accounting, and Plaintiff provides no particularized allegations to show that this alleged revenue recognition practice, which is not alleged to relate to the forthcoming restatement, "was anything more than [CW1's] own individual, subjective opinion[]." *Woolgar*, 477 F. Supp. 3d at 222. Even the CW reports on this point are inconsistent: CW3 says "only approximately 10% of LOIs … converted into sales"; CW1 says the "conversation rate … was only 15% to 25%"; and CW4 reports "30 to 40%." ¶¶ 33-34, 42. Even if the Court were to credit CW1's reports, CW1 speaks to the sales of only *one* of Latch's three revenue streams in just "*his* sales territory" (¶ 34)—which says nothing about Latch's company-wide sales practices (let alone its revenue recognition practices). *See Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 223 (S.D.N.Y. 2018). More fundamentally, CW1 is contradicted by the alleged facts: as Latch disclosed, it reported prospective sales under LOIs using the non-GAAP metric, "Total Bookings," which is a *separate* metric than "GAAP Measure[d]" revenue." Ex. 1 at 22, 49. CW1's specious allegations need not be credited. *See Robeco Cap. Growth Funds SICAV–Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*, 2023 WL 2711342, at *14 (S.D.N.Y. Mar. 30, 2023) (CW reports "not borne out by the totality of the facts … need not be credited").

*Second*, CW2 and CW3 report that Latch engaged in "channel stuffing" by recognizing as revenue hardware shipped to channel partners without any evidence of transfer to a bona fide buyer. ¶¶ 36-37. But the "critical deficiency" in the CWs' reports is that neither alleges any such

practices *during* the Class Period:  CW2's report is "undated," whereas CW3 reports "channel stuffing practices in 2018 and 2019," *i.e.*, years *before* the Class Period, at the pre-merger company.  ¶ 37; *see Woolgar*, 477 F. Supp. 3d at 221.  Moreover, CW3 was "not directly involved" in such practices, and his reports are based only on "rumors" that he "heard" from unspecified "sales staff."  ¶ 39; *see also Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 217 (2d Cir. 2010) (discounting CW allegations that lacked personal knowledge).

*Third*, Plaintiff challenges Latch's practice of recognizing revenue based on the price at which its channel partners sold hardware to the building developer, rather than the price at which Latch sold hardware to the channel partner.  ¶ 35 (citing CW2's report).  But Plaintiff does not allege how this practice violated ASC 606—if at all.  And it ignores that Latch disclosed this very practice in its Class Period filings.  *E.g.*, Ex. 1 at 50-51 (disclosing the price differential as "channel partner fees" under "Cost of Revenue").  Plaintiff's conclusory allegations regarding Latch's "systemic improper recognition of revenue" (¶ 62) cannot be credited.  *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 140 (D. Conn. 2007) ("conclusory allegations based upon rumor" are "undisputedly insufficient"), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).

*Fourth*, relying on CW4, Plaintiff alleges that Latch circumvented GAAP by recognizing revenue on hardware shipped to a "warehouse it controlled … without any evidence of transfer to a bona fide buyer."  ¶ 42.  CW4 does not allege when this practice allegedly occurred.  Nor does Plaintiff explain how CW4 possessed knowledge of Latch's revenue recognition practices, given his sales (and not accounting) role.  This Court has previously rejected nearly identical allegations. *See Gavish*, 2004 WL 2210269, at *18 (dismissing "unspecific" CW reports that "at some unspecified time" Revlon "shipped 'many shipments' to Safeway that Safeway had not ordered").

Plaintiff's "unparticularized allegation[s]" do not "meet[] the particularity requirements of the PSLRA." *Id*. at *14.

*Finally*, Plaintiff asserts, based on CW3's reports, that Latch violated GAAP by allowing customers the right to return certain products.  ¶¶ 56-59.  "Granting a right of return, however, is not fraudulent unless the seller fails to disclose the practice or, if it is disclosed, fails to maintain adequate reserves for expected returns in accordance with GAAP or the company's stated revenue recognition policy." *Gavish*, 2004 WL 2210269, at *14.  As Plaintiff concedes, Latch did not fail to disclose the practice in question or maintain adequate reserves.  ¶ 59; *see also* Ex. 1 at 75.

### b.      Plaintiff Does Not Plead Subjective Falsity

Even if Plaintiff could somehow show Defendants' revenue statements were objectively false at the time they were made (it does not), Plaintiff still fails to plead any facts showing any Defendant *subjectively* believed Latch's revenue recognition to be false, as required to show that Latch's opinion statements are actionable under the Supreme Court's decision in *Omnicare*.  575 U.S. at 188-89.  That Latch announced its intention to restate its financials after the Class Period does not show that Defendants' prior accounting judgments were made with fraudulent intent, or with knowledge of their falsity.  "[A] restatement is simply a correction, after the fact, of an accounting or other error in financial results" that "does not suggest knowledge or intent to misstate when the financial results were originally published"—particularly where, as here, "the error was a matter of judgment." *See In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *17 (S.D.N.Y. Sept. 29, 2022); *see also In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *18 (S.D.N.Y. Oct. 25, 2017) (no subjective falsity without "internal reports, documents, or communications" showing "Defendants' knowledge of … accounting practices").

### 2.    The Statements About Internal Controls Were Not False

Plaintiff challenges four of Defendants' SOX certifications regarding Latch's internal controls over financial reporting.  App. A (Stmts. 7, 11, 15, 20); ¶¶ 79, 83, 87, 93.  These SOX certifications "concern the conclusions" of Schoenfelder, Schaeffer, and Mitchell—which means they are opinions.  *AmTrust*, 2019 WL 4257110, at *24-25 ("attestation [in a SOX certification] is a statement of opinion.").  As noted above, to establish liability under *Omnicare*, Plaintiff must plead particularized facts showing (1) objective and subjective falsity, or (2) that Defendants "omit[ted] material facts" underlying the basis for their opinions, which "conflict with what a reasonable investor would take from the statement."  *Omnicare*, 575 U.S. at 188-89.  This "is no small task," and Plaintiff comes nowhere close to making this showing.  *Finger v. Pearson PLC*, 2019 WL 10632904, at *9 (S.D.N.Y. Sept. 16, 2019).

***Defendants' SOX certifications are not objectively and subjectively false***.  Plaintiff "must do more than simply allege that [Defendants'] conclusions were wrong."  *AmTrust*, 2019 WL 4257110, at *25.  It must identify specific facts suggesting that at the time of certification, Schoenfelder, Schaeffer, and Mitchell had reached a conclusion different from the one stated—or reached no conclusion at all.  *See id.*; *see also In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 402 (S.D.N.Y. 2016) (SOX certifications not actionable without allegations showing knowledge).  Plaintiff alleges neither, and its reliance on Latch's *post*-Class Period disclosure of "*more* material weaknesses" in internal controls (Ex. 8) does not show Defendants' earlier SOX certifications were false.  *In re Citigroup Sec. Litig.*, 2023 WL 2632258, at *20 (S.D.N.Y. Mar. 24, 2023) ("Post-Class Period identification of control deficiencies and misstatements, without more, does not show" earlier SOX certifications were false).

Nor does Plaintiff allege any facts showing Latch's independent external auditor, Deloitte & Touche LLP, believed or concluded that Latch's internal controls over financial reporting

16

suffered from an undisclosed material weakness regarding revenue recognition, which further "undermine[s] any inference that Defendants must have been aware of [an undisclosed] weakness during the same time period." *Woolgar*, 477 F. Supp. 3d at 230.  Plaintiff thus fails to show Defendants' opinions were both objectively and subjectively false.

**No Material Omission.**  Plaintiff cannot show Defendants' SOX certifications were false by omission.  Plaintiff admits that Latch disclosed, and Defendants attested to, "material weaknesses in [Latch's] internal control over financial reporting" for each Class Period quarter, which, "[i]f not corrected … could result in a material misstatement of our … financial statements."  ¶¶ 80, 84, 88, 94; Ex. 1 at 24-25.  Plaintiff nonetheless faults Defendants for not providing *more* information about the disclosed weaknesses, including that they pertained to Latch's allegedly improper "practice of recognizing revenue on LOIs and on hardware."  ¶¶ 80, 84, 88, 94.  But "a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact." *Dalberth v. Xerox Corp.*, 766 F.3d 172, 183 (2d Cir. 2014).  Rather, to prevail, Plaintiff must show "the omitted facts would conflict with what a reasonable investor would take from the statement itself." *Woolgar*, 477 F. Supp. 3d at 223-24.

Plaintiff does not explain how Latch's statement that it *suffered a material weakness* with respect to its financial reporting "was rendered misleading due to the nondisclosure of the alleged additional [revenue recognition] weakness." *Rok v. Identiv, Inc.*, 2017 WL 35496, at *7 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom. Cunningham v. Identiv, Inc.*, 716 F. App'x 663 (9th Cir. 2018); *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2017 WL 4049253, at *7 (S.D.N.Y. June 28, 2017) (plaintiffs "failed" to show internal controls statements "would be rendered misleading by failing to disclose a material fact"), *aff'd sub nom. Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018).  Nor can it; Latch told investors it may

"identify … new material weaknesses," which could limit Latch's "ability to prevent or detect a misstatement" of its financials.  Ex. 1 at 25; Ex. 3 at 57.  It is thus "difficult to see the [purported] omissions as misleading."  *Rok*, 2017 WL 35496, at *7.

### 3.    The Statements of Corporate Optimism Are Not Actionable

Schoenfelder's four Challenged Statements "tout[ing]" Latch's "powerful" or "strong" revenue results, App. A (Stmts. 3, 5, 9, 13); ¶¶ 75, 77, 81, 85, constitute nonactionable puffery, *i.e.*, "optimistic statement[s] that [are] so vague, broad, and non-specific that a reasonable investor would not rely on [them]."  *In re Nokia Corp. Sec. Litig.*, 2021 WL 1199030, at *17 (S.D.N.Y. Mar. 29, 2021).  The Second Circuit routinely dismisses these types of statements as not actionable. *See In re Xinhua Fin. Media, Ltd. Sec. Litig.*, 2009 WL 464934, at *8 (S.D.N.Y. Feb. 25, 2009) ("strong," "experienced," and "capable" amounted to "nothing more than puffery"); *City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*, 2019 WL 452051, at *5 (S.D.N.Y. Feb. 5, 2019) (statements touting "good progress this year" and "strong alignment" were puffery).

### C.    Plaintiff Fails to Plead a Strong Inference of Scienter

The Amended Complaint is deficient because it fails to allege with particularity that any Defendant acted with the requisite "strong inference" of scienter—*i.e.*, an "intent to deceive, manipulate, or defraud."  *Tellabs*, 551 U.S. at 313, 319; 15 U.S.C. § 78u-4(b)(2).  This is a high bar for a plaintiff to meet, as a "complaint will survive … only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010).  To do so, Plaintiff must allege particularized facts showing either (i) "motive and opportunity to commit fraud"; or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198.  Plaintiff comes nowhere close to satisfying this exacting standard.

### 1.    Plaintiff Alleges a Motiveless Fraud

18

Notably absent from the Amended Complaint is a single particularized fact showing *any* Defendant acted with motive and opportunity.  In fact, the word "motive" is not mentioned once in the Amended Complaint.  Plaintiff does not allege that any Defendant sold stock while employed during the Class Period, a failure which "fatally undermines" Plaintiff's scienter allegations.  *Russo v. Bruce*, 777 F. Supp. 2d 505, 518 (S.D.N.Y. 2011); *cf. Kalnit*, 264 F.3d at 142 (2d Cir. 2001) (motive "sufficiently pleaded" where "defendants misrepresented corporate performance to inflate stock prices while they sold their own shares").

### 2.    Plaintiff Fails to Plead Strong Circumstantial Evidence of Fraud as to Any Individual Defendant

Having failed to establish motive, Plaintiff's allegations of conscious misbehavior or recklessness as to each Defendant "must be correspondingly greater" to show a strong inference of scienter.  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  Such recklessness "must approximate 'actual intent'" and represent "an extreme departure" from ordinary care.  *In re Gen. Elec. Sec. Litig.*, 844 F. App'x 385, 388-89 (2d Cir. 2021).  The Amended Complaint contains no particularized facts meeting this high bar—in fact, it barely mentions Schoenfelder, Mitchell, or Schaeffer at all.  Despite including observations from four CWs, Plaintiff does not rely on any of them to support scienter.  Nor can it; *none* is alleged to have had any direct (or indirect) contact with any Defendant during the Class Period, and thus cannot speak to their states of mind.  *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) (rejecting CW reports without allegations they "met" or had "personal contact" with defendants).  Other than repeating the same boilerplate assertion that Defendants "knew and/or recklessly disregarded" that the Challenged Statements were false, ¶¶ 76, 78, 80, 82, 84, 86, 88, 90, 92, 94, only *one* paragraph out of the 135-paragraph Amended Complaint is remotely related to scienter—and only then to plead scienter based on generic "access" to data, "high-level executive[]" positions, and purported

"participat[ion]" in Latch's revenue recognition practices.  ¶ 127.  None establishes a strong inference of scienter.

***Speculative assertions about "access" are insufficient***.  Allegations that Defendants had "access" to "internal reports and other data and information" about "the Company's finances, operations, and sales" (*id.*) are "too vague to support an inference of scienter." *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021).  Plaintiff does not describe the internal reports to which Defendants allegedly had access—nor plead that they ever reviewed such reports.  *See Chen v. X Fin.*, 2021 WL 7449851, at *11 (E.D.N.Y. Dec. 9, 2021) ("access to information" does not establish scienter absent allegations "'identify[ing] the reports or statements containing [the contrary information]'").  Nor does Plaintiff allege a single fact about what those reports said, much less showing that they contradicted the Challenged Statements.  *See Woolgar*, 477 F. Supp. 3d at 237 (requiring "allegations that … *specific* contradictory information was available to the defendants").

***Scienter cannot be inferred based on executive-level positions***.  References to Defendants' "high-level executive[]" positions (¶ 127) similarly fail because "occup[ying] high-ranking positions … is insufficient to establish scienter." *Cox*, 660 F. App'x at 25.

***Defendants' purported participation in Latch's revenue recognition practices does not establish scienter***.  Defendants' alleged "participated in the creation, development and reporting of the Company's revenue recognition practices" (¶ 127) likewise fails.  This boilerplate allegation says nothing about the nature of their involvement or, critically, whether they knew of specific facts contradicting the Challenged Statements before they made those statements.  Plaintiff's allegations could apply to any senior corporate executive, irrespective of the state of their knowledge.  *See, e.g., City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 473

(S.D.N.Y. 2008) (rejecting "allegation[s] that knowledge of the accounting improprieties may be imputed to [those] involved in the day-to-day operations of the company").

### 3.     Plaintiff Fails to Plead Strong Circumstantial Evidence of Fraud as to Latch

Because Plaintiff fails to "plead scienter with respect to any" Defendant and "assert[s] no specific corporate scienter allegations," its allegations against Latch also fail.  *Kasilingam v. Tilray, Inc.*, 2021 WL 4429788, at *13 (S.D.N.Y. Sept. 27, 2021).

### 4.     The Far More Compelling Inference Is Good Faith, Not Fraud

Courts require dismissal where the "inference of fraudulent intent is not 'at least as compelling as any opposing inference one could draw.'"  *Slayton*, 604 F.3d at 777.  That is exactly the case here.  Plaintiff's theory of fraud makes little sense:  according to Plaintiff, Defendants knew as early as May 2021 that Latch's revenue recognition practices were deficient resulting in materially overstated revenue, and expressly cautioned investors about the weakness in its financial controls and risks to the reliability of its financial statements, while simultaneously concealing the full truth from investors until August 2022 when Latch disclosed—based on an internal investigation Latch itself initiated—that it had identified errors with certain reporting practices.  All the while, no Defendant is alleged to have sold stock or otherwise gained from the alleged scheme.  Plaintiff's alleged motiveless, profitless fraud undermines any inference of scienter—let alone a strong, cogent, and compelling inference.  *See Kalnit*, 264 F.3d at 140 (rejecting "nonsensical" scienter allegations that "defie[d] economic reason").

Instead, there is a more compelling, nonfraudulent explanation.  Latch was a fast-growing company that recognized—and *disclosed throughout the Class Period*—that it lacked sufficient experience, processes, and personnel over financial reporting, which resulted in deficient internal controls.  *E.g.*, Ex. 1 at 24-25.  Latch told investors that, "if not corrected," these weaknesses

"could affect the reliability of our consolidated financial statements." *Id.* Latch sought to remediate the disclosed weaknesses with help from independent consultants, and updated investors on its progress. *Id.* Yet it had not done so in time to prevent *some* sales personnel from failing to report certain terms of their specific sales agreements with *some* customers. And when Latch became aware of these issues, it retained external counsel and initiated an internal investigation, and promptly informed investors that its prior financial statements contained revenue recognition errors and should not be relied upon—even though it had not yet identified precisely what those errors were nor the revenue impact they would cause. *See Plumbers & Pipefitters Loc. Union No. 719 Pension Tr. Fund v. Conseco Inc.*, 2011 WL 1198712, at *22 (S.D.N.Y. Mar. 30, 2011) (no fraud where defendants "apprise[d] the market" of internal controls weaknesses and need for restatement); *In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 573-74 (S.D.N.Y. 2007) (no fraud where "misreported financial information" could have resulted from lack of personnel with "GAAP expertise" and company retained "external accounting advisors" to assist). Latch's conduct demonstrates good faith and prompt disclosure, not fraud.

## IV.   PLAINTIFF FAILS TO PLEAD A SECTION 20(a) CLAIM

Because Plaintiff fails to state a predicate violation of the Exchange Act, the Section 20(a) claim must be dismissed. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

## V.   CONCLUSION

Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Dated:   November 21, 2023
         San Diego, California

                              LATHAM & WATKINS LLP

                              By:/s/ Colleen C. Smith
                                 Colleen C. Smith (*pro hac vice*)
                                 12670 High Bluff Drive
                                 San Diego, California 92130
                                 Tel: (858) 523-5400
                                 Fax: (858) 523-5450
                                 Email: colleen.smith@lw.com

                                 Michele D. Johnson (*pro hac vice
                                 forthcoming*)
                                 Kristin N. Murphy (*pro hac vice*)
                                 650 Town Center Drive, 20th Floor
                                 Costa Mesa, CA 92626
                                 Tel: (714) 540-1235
                                 Fax: (714) 755-8290
                                 Email: michele.johnson@lw.com
                                 Email: kristin.murphy@lw.com

                                 *Attorneys for Defendants Latch, Inc. f/k/a TS
                                 Innovation Acquisitions Corp., Luke
                                 Schoenfelder, Garth Mitchell, and Barry
                                 Schaeffer*

23

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify that this memorandum of law contains 6,872 words, as counted by Microsoft Word, excluding the cover page, this certification of compliance, the table of contents, the table of authorities, and the signature block, and that it complies with the formatting rules set forth in Section II.D of the Individual Practices of Judge John G. Koeltl.

Dated:    November 21, 2023
                San Diego, California

                                                        */s/ Colleen C. Smith*
                                                        Colleen C. Smith