**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SLATER BRENNAN, Individually and on behalf of
all others similarly situated,

               Plaintiff,

      v.

LATCH, INC. f/k/a TS INNOVATION
ACQUISITIONS CORP., LUKE SCHOENFELDER,
GARTH MITCHELL, and BARRY SCHAEFFER,


               Defendants.

Case No. 1:22-cv-07473-JGK

ORAL ARGUMENT
REQUESTED

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

I.      Introduction ................................................................................................ 1

II.     Background ................................................................................................. 3

        A.      Latch's Full-Building Operating System Revolutionizes the Building
                Experience for Owners and Residents ............................................ 3

        B.      Latch Goes Public and Provides Detailed Disclosures About Its Revenue
                Recognition Practices .................................................................... 4

        C.      Latch Warns Investors That Revenue Reporting Requires Significant
                Judgment, and Suffers and Discloses Material Weaknesses in Internal
                Controls ......................................................................................... 5

        D.      Latch Reminds Investors That It Has Material Weaknesses in Internal
                Controls in Each Class Period Quarter .......................................... 6

        E.      Latch Announces Plans to Restate Financial Statements ............... 7

III.    Legal Standard ........................................................................................... 8

IV.     Plaintiff Lacks Standing to Challenge Revenue Statements Made By or About a
        Different Company ..................................................................................... 9

V.      Plaintiff Fails to Plead Facts Establishing Any Actionably False or Misleading
        Statement ................................................................................................... 9

        A.      The Challenged Statements About Revenue Reporting and Recognition
                Were Not False ............................................................................. 10

                1.      Plaintiff's Allegations Do Not Plead Objective Falsity ......... 11

                        a.      A Proposed Restatement Does Not Show the Revenue
                                Statements Were Objectively False .......................... 11

                        b.      The CW Allegations Do Not Establish Objective Falsity .... 12

                2.      Plaintiff's Allegations Do Not Establish Subjective Falsity .... 15

        B.      The Challenged Statements About Internal Controls Were Not False ......... 16

        C.      Latch's Statements of Corporate Optimism Are Not Actionable ......... 16

        D.      Latch's Forward-Looking Statements Are Not Actionable ............ 17

VI.     Plaintiff Fails to Allege Facts Establishing a Violation of Any SEC Regulations .... 18

VII.    Plaintiff Fails to Plead Facts Establishing a Strong Inference of Scienter ........ 19

        A.      Plaintiff Alleges a Motiveless Fraud .......................................... 19

        B.      Plaintiff's Allegations Do Not Provide Strong Circumstantial Evidence of
                Fraud ............................................................................................. 20

i

C.     The Far More Compelling Inference Is Good Faith, Not Fraud ............................21

VIII.  Many of the Alleged Corrective Disclosures Are Insufficient to Support Loss Causation................................................................................................................22

IX.    Plaintiff Fails to Plead a Section 20(a) Claim..................................................23

X.     Conclusion .......................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*,
2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ........................................................................19

*Campo v. Sears Holdings Corp.*,
371 F. App'x 212 (2d Cir. 2010) ........................................................................................15

*In re Carbo Ceramics, Inc. Stock & Options Sec. Litig.*,
2013 WL 3242352 (S.D.N.Y. June 26, 2013) .....................................................................14

*In re CarLotz, Inc. Sec. Litig.*,
2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) ......................................................................9

*Chen v. X Fin.*,
2021 WL 7449851 (E.D.N.Y. Dec. 9, 2021) .......................................................................21

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008)..................................................................................21

*Cox v. Blackberry Ltd.*,
660 F. App'x 23 (2d Cir. 2016) ...........................................................................................21

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..............................................................................................................23

*In re Eargo, Inc. Sec. Litig.*,
2023 WL 1997918 (N.D. Cal. Feb. 14, 2023) .....................................................................10

*ECA Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)..................................................................................................20

*Finger v. Pearson PLC*,
2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019)....................................................................16

*Gavish v. Revlon, Inc.*,
2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004)...............................................................12, 15

*GE Invs. v. Gen. Elec. Co.*,
447 F. App'x 229 (2d Cir. 2011) ..........................................................................................23

*In re Gen. Elec. Sec. Litig.*,
844 F. App'x 385 (2d Cir. 2021) ..........................................................................................20

*Gray v. Wesco Aircraft Holdings, Inc.*,
454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021)......................18

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
   2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd sub nom. In re Hertz Glob. Holdings Inc*,
   905 F.3d 106 (3d Cir. 2018)......................................................................................17

*In re Iconix Brand Grp., Inc.*,
   2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017) ..........................................................16

*In re Int'l Bus. Machs. Corp. Sec. Litig.*,
   163 F.3d 102 (2d Cir. 1998)........................................................................................9

*Ironworkers Loc. 580--Joint Funds v. Linn Energy, LLC*,
   29 F. Supp. 3d 400 (S.D.N.Y. 2014)........................................................................19

*Janbay v. Canadian Solar, Inc.*,
   2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013), *aff'd*, No. 13-1681 (2d Cir. Dec. 20, 2013) ...11

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)................................................................................20, 22

*Kasilingam v. Tilray, Inc.*,
   2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021)..........................................................21

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   2023 WL 3778765 (U.S. May 30, 2023), *cert. granted*, 2023 WL 6319659 (U.S. Sept. 29,
   2023) .........................................................................................................................18

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
   518 F. Supp. 3d 772 (S.D.N.Y. 2021)......................................................................21

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
   54 F.4th 82 (2d Cir. 2022) ..........................................................................................9

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
   80 F.4th 158 (2d Cir. 2023) ........................................................................10, 11, 16

*In re Nokia Corp. Sec. Litig.*,
   2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021) ........................................................16

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)......................................................................................12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)..............................................................................11, 14, 15, 16

*In re Omnicom Grp., Inc. Sec. Litig.*,
   541 F. Supp. 2d 546 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) ............23

*In re Philip Morris Int'l Inc. Sec. Litig.*,
   2023 WL 8883457 (2d Cir. Dec. 26, 2023) ................................................8, 10, 23

*In re Plug Power, Inc. Sec. Litig.*,
   2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) .........................................................16

*Plumbers & Pipefitters Loc. Union No. 719 Pension Tr. Fund v. Conseco Inc.*,
   2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011) .........................................................22

*Plumbers, Pipefitters & MES Loc. Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
   886 F. Supp. 2d 328 (S.D.N.Y. 2012)...............................................................11, 12

*Rok v. Identiv, Inc.*,
   2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom. Cunningham v. Identiv, Inc.*,
   716 F. App'x 663 (9th Cir. 2018) .........................................................................16

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004).....................................................................................8

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
   2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) .........................................................17

*Russo v. Bruce*,
   777 F. Supp. 2d 505 (S.D.N.Y. 2011)....................................................................20

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199
   (2d Cir. 2016)........................................................................................................17

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010)............................................................................18, 21

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
   2011 WL 1253250 (D. Ariz. Mar. 31, 2011) .........................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................................................19

*In re Wachovia Equity Sec. Litig.*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011)....................................................................20

*Woolgar v. Kingstone Cos.*,
   477 F. Supp. 3d 193 (S.D.N.Y. 2020).............................................................12, 13

# STATUTES

15 U.S.C.
    § 78u-4 ...................................................................................................8, 19
    § 78u-5 .................................................................................................17, 18

# RULES

Fed. R. Civ. P. 9 .............................................................................................8

# REGULATIONS

17 C.F.R.
    § 229.303 .......................................................................................................19
    § 244.102 .......................................................................................................19

# OTHER AUTHORITIES

Acct. Standards Codification Topic
    606 .............................................................................................................4, 10

## GLOSSARY

The following terms are used in this memorandum:

| Term | Definition |
|---|---|
| ¶ | All paragraph cites are to the Second Amended Complaint |
| Appendix A or App. A | Appendix A, filed with the Declaration of Kristin N. Murphy, listing in tabular format statements challenged by Plaintiff |
| ASC 606 | Accounting Standard Codification Topic 606 |
| CEO | Chief Executive Officer |
| CFO | Chief Financial Officer |
| Challenged Statements | Statements Plaintiff challenges as false or misleading, SAC ¶¶ 109-137 |
| Class Period | June 7, 2021 through and including August 1, 2023 |
| CW(s) | Confidential Witness(es), as identified in the SAC |
| Defendants | Latch, Inc., Luke Schoenfelder, Garth Mitchell, and Barry Schaeffer |
| Exchange Act | The Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et. seq.* |
| Ex(s). or Exhibit(s) | Exhibits attached to the Declaration of Kristin N. Murphy, filed concurrently, which are public filings and statements and are incorporated into the SAC and/or subject to judicial notice |
| FY19, FY20, FY21, FY22 | Fiscal years, starting with fiscal year 2019 through fiscal year 2022 |
| GAAP | Generally Accepted Accounting Principles |
| Items 10(e) and Item 303 | SEC Regulation S-K, 17 CFR §§ 229.10 and 229.303 |
| Latch or the Company | Latch, Inc. |
| LOI(s) | Letter(s) of intent to purchase goods |
| Nasdaq | Nasdaq Stock Market LLC |
| Plaintiff | Lead Plaintiff VP PTC Establishment as Trustee of Gersec Trust |
| PSLRA | The Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77k, 77l, 77z-1, 77z-2, 78a, 78j-1, 78t, 78u, 78u-4, 78u-5 |
| Regulation G | SEC Regulation G, 17 C.F.R. § 244.100(b) |
| SEC | Securities Exchange Commission |
| SAC, Second Amended Complaint, or Complaint | Second Amended Consolidated Class Action Complaint for Violation of Federal Securities Laws, filed December 5, 2023, ECF No. 69 |
| SOX | The Sarbanes-Oxley Act of 2002 |

| SOX certifications | Certifications required under the Sarbanes-Oxley Act attesting to the accuracy of a company's financial statements |
|---|---|
| SPAC | Special purpose acquisition company |
| TSIA | TS Innovation Acquisitions Corp. |

## I.       INTRODUCTION

This is now Plaintiff's third attempt to plead a claim for securities fraud.  Its latest complaint, however, does not fix the deficiencies identified in the earlier complaints—making clear that Plaintiff cannot.  In particular, Plaintiff adds *no new particularized* facts supporting its falsity, scienter, or loss causation claims.  Instead, the Complaint withdraws a few of the Challenged Statements while adding others that echo the same basic allegation that Latch failed to comply with GAAP.  Plaintiff likewise continues to rely on the same four confidential witnesses, even though none are alleged to have had any involvement in Latch's accounting practices nor interaction with any Defendant during the Class Period.  And Plaintiff's unpersuasive attempt to stretch the Class Period in search of a viable stock drop only reinforces that the disclosures on which Plaintiff principally relies did not cause it any loss.  These unremedied defects only scratch the surface of the problems plaguing Plaintiff's Complaint and underscore that it remains fatally deficient.

Plaintiff's claims stem from Latch's disclosure of an investigation into its revenue accounting, and its announcement that it would restate its financial statements to correct unspecified revenue recognition errors.  Plaintiff's claims are all based on a single alleged GAAP violation—that Latch "improperly recognized revenue" in violation of ASC 606 (*e.g.*, ¶ 120)—something Plaintiff says establishes securities fraud per se.  It does not, and the Complaint falls far short of meeting the PSLRA's rigorous and heightened standards to plead a securities fraud claim.

*First*, Plaintiff's challenge to Latch's statements reporting revenue and outlining internal controls *before* Latch became a public company must be dismissed.  Plaintiff did not hold stock in pre-merger, private Latch and thus lacks standing to challenge statements made by or about that private company.

*Second*, Plaintiff fails to plead that the Challenged Statements are actionably false, as they are not false or misleading at the time they were made, non-actionable accounting judgments or opinion statements, classic puffery, or forward-looking.  Indeed, Plaintiff largely challenges accounting judgments that turn on matters of subjective opinion, and so Plaintiff must show that these opinion statements were both objectively false and made with subjective belief of their falsity.  Plaintiff does not come close to meeting this standard.  It relies principally on the fact that Latch acknowledged revenue recognition errors and announced its intention to correct them through restated financials.  But Latch's announcement says nothing about the impact the forthcoming restatement will have on its revenue (if any) and, as other cases have held, an intention to restate revenue does not render the Challenged Statements objectively and subjectively false when made.  Plaintiff's only other attempt to establish falsity is to marshal confidential witnesses to criticize certain sales practices.  But not one CW claims to have had any involvement with, or insight into, Latch's revenue recognition practices during the Class Period—all worked in sales or as an engineer.  None can speak to whether Latch complied with GAAP, let alone knowingly made errors.

*Third*, Plaintiff fails entirely to meet its heavy burden to allege particularized facts giving rise to a strong inference of scienter.  Plaintiff does not allege that any Defendant sold stock during the Class Period while employed at Latch, which is wholly inconsistent with fraudulent intent.  Nor does Plaintiff allege a single particularized fact showing Defendants knew (or were deliberately reckless in not knowing) Latch recognized revenue in violation of ASC 606, yet allowed it to recognize the revenue anyway.  Instead, Plaintiff offers the same conclusory assertions of scienter (in one, solitary paragraph) that courts within this district routinely reject.  Defendants' response to learning of potential accounting errors further weighs against any

inference of scienter:  they disclosed weaknesses in internal controls throughout the Class Period and worked to enhance those controls, began an investigation, hired outside advisors, and promptly informed investors.  Latch even missed its deadline to file restated financial statements because it prioritized accuracy over expediency—to its own detriment, as it was subsequently delisted by Nasdaq.  The only reasonable inference from the alleged facts is that Defendants undertook a conscious effort to investigate and fix potential errors—not that they deliberately aimed to deceive.

*Finally*, none of Latch's disclosures post-dating August 2022 is a corrective disclosure. All either repeated already-public information or information unrelated to the alleged fraud, or caused Latch's stock price to *increase*, which could not have caused Plaintiff any purported loss.

The Complaint should be dismissed, this time with prejudice.

## II.     BACKGROUND

### A.     Latch's Full-Building Operating System Revolutionizes the Building Experience for Owners and Residents

Latch is an enterprise technology company focused on revolutionizing how people experience spaces by making residential buildings more functional, accessible, and enjoyable for building owners, residents, and employees.  Ex. 1 at 5.  Latch was co-founded by Luke Schoenfelder in 2014 and created a full-building operating system called LatchOS, which integrates hardware with software to virtually control door access, among other things.  ¶ 25. Within the LatchOS ecosystem, Latch sells hardware, software, and services.  ¶ 26.  Schoenfelder served as CEO throughout the Class Period before leaving Latch on January 11, 2023.  ¶ 20.  Garth Mitchell served as CFO until March 2022, at which time he was replaced by Barry Schaeffer. ¶¶ 21-22.  Schaeffer left Latch in January 2023.  ¶ 22.

**B.      Latch Goes Public and Provides Detailed Disclosures About Its Revenue Recognition Practices**

On June 4, 2021, Latch, then a private company, merged with TSIA, a SPAC, and began publicly trading on Nasdaq.  ¶ 24.  In its Prospectus and Class Period filings, Latch described its business and finances in detail, including extensive disclosures about the manner in which it recognizes revenue. ¶¶ 30-31; *see also* Ex. 2 at 148-50; Ex. 1 at 75-77.  Among other things, Latch explained that it derives revenue from sales of hardware, software (on a subscription basis), and services (related to the installation of hardware) in accordance with ASC 606.  Ex. 1 at 57.

ASC 606 guides companies on when and how much revenue to recognize from contracts with customers.  ¶ 62.  It is inherently subjective and allows companies to recognize revenue when an asset or control of an asset is transferred to the customer.  *Id.*; ASC 606-10-25-23.  Consistent with ASC 606, Latch recognized revenue on hardware sales when the product was "shipped … which is when control is transferred to the building developer."  Ex. 1 at 57.

Separately, Latch historically entered into non-binding LOIs with customers "specifying which software and devices they want to receive and on which dates."  Ex. 2 at 143; Ex. 1 at 6.  Upon execution of an LOI, Latch had not yet shipped hardware, and so control had not been transferred.  Ex. 2 at 149; Ex. 1 at 49.  Thus, prospective sales under LOIs were not treated as revenue.  Instead, Latch reported them as "Total Bookings," a non-GAAP metric "measur[ing] sales volume and velocity of … hardware and software products."  Ex. 1 at 49.  Latch presented Total Bookings under "Key Performance Indicators"—a separate metric from "GAAP Measure[d]" revenue—and noted that "[t]here is no guarantee that the number of booked units will convert into actual deliveries" and thus revenue, "or will convert into deliveries within the timeframe we anticipate." *Id.* at 22, 49.  Instead, Latch relied on LOIs for "visibility" into "demand planning" and "forecasting."  *Id.* at 10; Ex. 2 at 137.  As a non-GAAP metric, Latch was not

4

required to, and did not, include discounts in its reporting of bookings—something it expressly disclosed.  Ex. 1 at 49.

### C.     Latch Warns Investors That Revenue Reporting Requires Significant Judgment, and Suffers and Discloses Material Weaknesses in Internal Controls

Recognizing revenue was not a straightforward process.  Latch acknowledged that the timing of revenue recognition, as well as the amount to recognize, was inherently a judgment call. *See* Ex. 2 at 156; Ex. 1 at 56.  For hardware, Latch recorded as revenue the amount it expected to receive from the sale of its products and included costs associated with earning those sales as cost of revenue, including warranties (*i.e.*, returns of defective hardware and, in certain circumstances, non-defective hardware).  Ex. 2 at 157; Ex. 1 at 57.  Because Latch did not know ahead of time if it would be required to refund, replace, or repair a returned product, Latch "record[ed] a reserve" for the costs associated with warranties "as a component of cost of [hardware] revenue."  Ex. 2 at 157.  This was an inherently imprecise process involving a "great[] degree of judgment and complexity," and Latch specifically warned that it could not guarantee its ability to accurately recognize revenue.  Ex. 1 at 56; Ex. 2 at 156.  Indeed, for wholesale returns and accounts receivable—the two warranties Plaintiff focuses on (¶¶ 72-73, 118, 123)—management determined reserves "based on the Company's expectations and historical experience," as well as "past history of write-offs, collections and current credit conditions."  Ex. 1 at 73, 75.  The reserve against wholesale returns and accounts receivable remained consistent throughout the Class Period. *E.g.*, Ex. 3 at 10.

Latch also recorded "channel partner fees"—*i.e.*, the difference between the price that channel partners sold hardware to the building developer and the price at which Latch sold the hardware to the channel partner—as a "cost of revenue."  Ex. 1 at 50-51.  These fees were

5

"discretion[ary]" and "based on a standard price list" ranging "from 20% to 40% of the sales price of the hardware." Ex. 2 at 29, 133-34.

### D.   Latch Reminds Investors That It Has Material Weaknesses in Internal Controls in Each Class Period Quarter

From the outset of its existence as a public company, Latch disclosed that it had "identified material weaknesses in [its] internal control over financial reporting" that "could result in a material misstatement of our annual or interim financial statements." Ex. 1 at 24-25; Ex. 2 at 34. Latch offered several reasons for this weakness. First, before merging with TSIA and becoming a public company, Latch had not been required to document and test internal controls over financial reporting and its auditors had not been required to provide an "attestation report on our system of internal controls over financial reporting." Ex. 1 at 61; Ex. 2 at 34, 161. Second, and as a result, Latch lacked "the necessary business processes and related internal controls" and personnel with the "appropriate level of experience and technical expertise to oversee our business processes and controls." Ex. 1 at 99; Ex. 2 at 34, 62.

Although Latch warned it "cannot assure" investors it "will be able to fully remediate [the weaknesses], which could impair our ability to accurately and timely meet our public company reporting requirements," Ex. 1 at 100, management worked diligently to "implement[] substantial remediation efforts." Ex. 3 at 39. For example, Latch "engaged with external consultants … to facilitate accurate and timely accounting closes and to accurately prepare and review the financial statements." *Id.* Latch warned, however, that these (or any newly identified) material weaknesses "could result in a material misstatement of our … financial statements." Ex. 1 at 25; Ex. 2 at 34. Despite management's good-faith efforts, the internal controls weaknesses remained throughout the Class Period, and Latch continued updating investors that its "[r]emediation efforts are still ongoing." *E.g.*, Ex. 3 at 39.

### E.      Latch Announces Plans to Restate Financial Statements

On August 10, 2022, Latch announced an investigation into "certain aspects of the Company's current and historic key performance indicators," including "revenue recognition practices" and "internal controls related thereto." Ex. 4 at 2.  Latch retained experienced external counsel to conduct the investigation under the Audit Committee's supervision.  Ex. 5 at 2. Following this announcement, Latch's stock price increased 6%.  Ex. 6.

Latch also disclosed that it had fallen out of compliance with Nasdaq's listing rules, and might be subject to delisting from Nasdaq.  Ex. 7 at 2.  Two weeks later, on August 25, 2022, Latch announced the preliminary findings of the investigation, noting that "certain revenue recognition errors occurred as a result of unreported sales arrangements." Ex. 8.  Latch decided to restate each periodic financial statement dating back to the beginning of 2021.  *Id.*  On the day following this announcement, Latch's stock closed at $0.95 per share, a decline of 12.2%, and this suit followed.  ¶ 6.  But just a few weeks later, Latch's stock rebounded to close almost 29% higher. Ex. 6.

In the following months, Latch worked diligently to investigate its revenue recognition practices, and on January 23, 2023 announced that it had "substantially complete[d]" its investigation.  Ex. 5 at 2.  The investigation identified "errors in the recognition of revenue" that impacted the "amount and timing of revenue to be recognized," which were due, in part, to "certain sales personnel in certain cases" who had "fail[ed] … to disclose relevant terms they had negotiated with customers."  *Id*.  Latch resolved to restate its financial statements for FY19 and FY20, and announced its intention to complete the restatement "as soon as reasonably practicable" after its "independent registered public accounting firm"—which was conducting its own separate audit—had signed-off on the results.  *Id*.  Again, following this disclosure, Latch's stock price increased.  Ex. 6.

Although Latch had "substantially complete[d]" the investigation, significant work remained to restate more than three years of financial statements and remediate the errors identified in the investigation. Ex. 5 at 2. Nasdaq imposed an August 4, 2023 deadline to file the restated financial statements, which Latch strived to meet but made "no assurances" that it would be able to do so. Ex. 9 at 2. After months of good-faith efforts to address the errors, restate financials, and regain compliance, on August 1, 2023, Latch disclosed that, due to "unexpected delays," it would be unable to meet the filing deadline and would thus be delisted, "causing the Company's securities to be suspended from trading on Nasdaq." Ex. 10. The following day, Latch's stock price dropped. ¶ 158.

Plaintiff amended its complaint on October 20, 2023 and then again on December 5, 2023—before Latch issued any restatement.

## III.    LEGAL STANDARD

To state a Section 10(b) claim based on alleged misstatements or omissions, Plaintiff must plead (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See In re Philip Morris Int'l Inc. Sec. Litig.*, 2023 WL 8883457, at *4 (2d Cir. Dec. 26, 2023). Section 10(b) claims are subject to the strict and rigorous pleading requirements of Rule 9(b), which requires Plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Similarly, the PSLRA requires a plaintiff to "state with particularity" (1) "each act or omission"; (2) the "reasons why" those statements or omissions are false or misleading; and (3) specific "facts giving rise to a strong inference" that each defendant acted with scienter. 15 U.S.C. § 78u-4(b). Failure to plead specific alleged facts meeting these standards mandates dismissal. *Id*.

8

IV.   **PLAINTIFF LACKS STANDING TO CHALLENGE REVENUE STATEMENTS MADE BY OR ABOUT A DIFFERENT COMPANY**

Plaintiff's challenge to six statements discussing Latch's revenue reporting and internal controls *before* Latch became a public company (App. A (Stmts. 1-6)) fails at the outset because Plaintiff lacks statutory standing to challenge them. *See Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 86 (2d Cir. 2022) (plaintiff lacks standing to sue company without trading its securities). There was no publicly traded Latch common stock before June 4, 2021, when private Latch—a different company—merged with TSIA to create an entirely new company: public Latch. ¶ 24. Indeed, Plaintiff concedes it never owned any shares in the private, *pre-merger* entity. ECF No. 22-3. Because Plaintiff nor any class of shareholders it purports to represent "bought or sold securities about which the misstatements were made" in private Latch, they "thus lack standing" to challenge statements made by and about that company. *In re CarLotz, Inc. Sec. Litig.*, 2023 WL 2744064, at *4-5 (S.D.N.Y. Mar. 31, 2023).[1]

V.   **PLAINTIFF FAILS TO PLEAD FACTS ESTABLISHING ANY ACTIONABLY FALSE OR MISLEADING STATEMENT**

As for the remaining sixteen statements, Plaintiff alleges that they were false or misleading because Defendants misrepresented (1) Latch's revenue reporting and recognition practices, and/or (2) the effectiveness of Latch's internal controls. ¶¶ 119-138. But Plaintiff does not allege facts sufficient to establish that the Challenged Statements were false or misleading.

---

[1] Additionally, statements made *before* the Class Period (App. A (Stmts. 1-3)) are not actionable. *In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998).

A.     **The Challenged Statements About Revenue Reporting and Recognition Were Not False**

Plaintiff challenges ten statements reporting revenue, bookings, and reserves, including Schoenfelder's statements "tout[ing]" Latch's revenue and bookings (App. A (Stmts. 7-9, 11-13, 15-16, 19-20), and two statements describing Latch's revenue recognition practices (*id.* (Stmts. 18, 21)) ("Revenue Statements").   According to Plaintiff, the Revenue Statements were false because Defendants "improperly recognized revenue" in violation of ASC 606.   ¶¶ 120, 122, 125, 127, 129, 131, 135, 138.

As the Second Circuit recently recognized, the inherently subjective nature of accounting judgments—like Latch's revenue recognition decisions here—renders those judgments opinions, rather than statements of fact.  *In re Philip Morris*, 2023 WL 8883457, at *5.  So too here.  ASC 606 permits a company to recognize revenue from sales to customers when, among other things, it is "probable" the seller "will collect substantially all of the consideration to which it will be entitled." ASC 606-10-25-1.  Management must "assess[] … whether the customer has the ability and intention to pay the consideration," which "requires" management "to use judgment and consider … the entity's customary business practices and its knowledge of the customer."  ASC 606-10-25-1(e), 606-10-55-3B.    Because this calls for a subjective judgment based on management's *beliefs*, compliance with ASC 606 is a matter of "opinion."  *In re Eargo, Inc. Sec. Litig.*, 2023 WL 1997918, at *7 (N.D. Cal. Feb. 14, 2023); *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 172-74 (2d Cir. 2023) (revenue recognition statements were opinions).   Defendants' statements therefore are actionably false under the PSLRA only if the opinion is both incorrect (*i.e.*, objectively false) and not genuinely believed (*i.e.*, subjectively false).  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015).  Plaintiff's allegations do not satisfy either requirement.

10

1.      **Plaintiff's Allegations Do Not Plead Objective Falsity**

a.      **A Proposed Restatement Does Not Show the Revenue Statements Were Objectively False**

Plaintiff alleges that the Revenue Statements were per se false and misleading because Latch announced an intention to restate financials due to "certain revenue recognition errors." ¶ 141. But there is no "strict liability" for restating financials. *Plumbers, Pipefitters & MES Loc. Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 336 (S.D.N.Y. 2012). Rather, as the Second Circuit recently confirmed, Plaintiff must plead facts showing that Defendants lacked a reasonable basis to recognize the challenged revenue *at the time* it recognized such revenue. *See DeCarlo*, 80 F.4th at 173-74 (considering whether company had "evidence justif[ying]" it's recognition of revenue under GAAP prior to being restated). Plaintiff does not plead such facts. Plaintiff instead relies entirely on Latch's announcement that it identified errors requiring restatement. Because that announcement is not evidence that Latch lacked a reasonable basis for recognizing the revenue *at the time*, Plaintiff does not meet its pleading burden.

Plaintiff also pleads no facts to support that Latch's yet-to-happen restatement is connected to Plaintiff's alleged fraud. As a result, Plaintiff cannot meet its burden to plead falsity with *particularity—i.e.* to show that the revenue statements are false for the reason Plaintiff claims. *See Janbay v. Canadian Solar, Inc.*, 2013 WL 1287326, at *10 (S.D.N.Y. Mar. 28, 2013), *aff'd* No. 13-1681 (2d Cir. Dec. 20, 2013) (requiring "particularized facts showing [] revisions were the result of improper sales"). Absent such allegations, Plaintiff fails to plead objective falsity. *See Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc*., 2011 WL 1253250, at *27 (D.

11

Ariz. Mar. 31, 2011) (no falsity absent facts establishing a "specific nexus" between a restatement and the alleged fraud).[2]

### b.       The CW Allegations Do Not Establish Objective Falsity

Lacking any allegations to show that Defendants were aware of facts that would render the Revenue Statements false, Plaintiff relies instead on four anonymous CWs who allegedly observed "improper revenue recognition schemes" relating to bookings, channel partner fees, channel stuffing, shipping practices, and consignment sales.  ¶ 53.  That effort fails.  For such allegations to aid Plaintiff at the pleading stage, Plaintiff must plead facts "with sufficient particularity to support the probability" that the CWs "would possess the information alleged."  *Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 218-19 (S.D.N.Y. 2020) (quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)).  No such allegations exist here:  "*none* of the CWs [is] alleged to have specific experience with or knowledge of the Company's" revenue recognition practices—let alone knowledge of whether any Defendant was involved in, or had knowledge of, these practices. *Id*.  Just the opposite, CW1, CW2, and CW4 all worked in sales and had no responsibility for revenue recognition; CW3, meanwhile, worked as an engineer during the Class Period.  ¶¶ 35-38.

---

[2] Because Latch has not yet restated its financials, Plaintiff's challenge to the Revenue Statements fail for the additional and independent reason that Plaintiff has not and cannot show that the alleged errors materially affected Latch's overall financial picture such that a reasonable investor would have been misled.  *Fairfax Fin.*, 886 F. Supp. 2d at 336 (revenue statements not rendered false by restatement without "material" impact to profits or losses); *see also Gavish v. Revlon, Inc.*, 2004 WL 2210269, at *16 (S.D.N.Y. Sept. 30, 2004) (no falsity without "specific allegation[s] of monetary consequence").

The CW reports are insufficiently reliable to plead that Latch's statements were objectively false for other reasons too.

***Hardware bookings***.  Plaintiff challenges Latch's reporting of bookings for two reasons. First, Plaintiff claims—based on CW1's "belie[f]"—that Latch recognized revenue on LOIs before conversion into actual sales.  ¶ 39.  Yet CW1 did not work in accounting, offers no *factual* basis to support his belief, and says nothing about whether this purported practice was pervasive.  *E.g., Woolgar*, 477 F. Supp. 3d at 222 (rejecting CW allegations not based on "anything more than [CW's] own individual, subjective opinions").   Second, Plaintiff claims Latch improperly excluded discounts from bookings.  ¶¶ 120, 125, 129.  But Plaintiff fails to show *how* or *why* Latch violated ASC 606 by not accounting for discounts in its reporting of bookings, a *non-GAAP* metric—particularly since Latch expressly disclosed this practice.  *E.g.*, Ex. 1 at 49.

***Channel partner fees***.  Plaintiff also fails to adequately allege that Latch improperly recognized revenue by doing so at the channel partner's sale price rather than the price at which Latch sold hardware to the channel partner, and then reporting the price difference as "channel partner fees" in Latch's "cost of sales."  ¶¶ 42-43, 83 (citing CW2's report).  First, Plaintiff's assertion that this practice violated ASC 606 is based on a citation to an 868-page "PwC Financial statement presentation guide" that it says concludes that channel partner fees are "unrelated" to cost of sales.  ¶ 45.  But that guide does not even *mention* channel partner fees; rather, it confirms that "*[j]udgment is required* to determine which costs should be allocated to cost of sales"—a decision reserved for management that Plaintiff fails to show, as applied here, was objectively (or subjectively) false.  Ex. 11; *Omnicare*, 575 U.S. at 188-89.

Second, the "allegedly omitted or misrepresented information was in fact appropriately disclosed"—meaning, Plaintiff cannot show that any investor was misled.  *In re Carbo Ceramics,*

*Inc. Stock & Options Sec. Litig.*, 2013 WL 3242352, at *6 (S.D.N.Y. June 26, 2013).  Indeed, Latch disclosed this practice precisely where investors would expect to see it:  in the same section and on the same page as Latch's explanation of how it derives hardware revenue.  Ex. 1 at 50-51. Latch also explained that "channel partner fees" comprised "discretion[ary]" payments to channel partners for "carry[ing] out installation and service at customer buildings," and ranged "from 20% to 40% of the sales price of the hardware."  Ex. 2 at 29, 133, 150.  Plaintiff cannot therefore show that investors were misled.

*Channel stuffing*.  CW2 and CW3 report that Latch engaged in "channel stuffing" by "urg[ing]" "select channel partners" to overorder hardware, thus allowing Latch to "recognize more revenue."  ¶¶ 48-49, 51.  But these allegations fail for numerous reasons.  To begin with, Plaintiff does not allege that any such practices occurred *during* the Class Period:  CW2's report is "undated," whereas CW3 reports "channel stuffing practices in 2018 and 2019," *i.e.*, years *before* the Class Period, at the pre-merger company, which, Plaintiff concedes, Latch "cleaned up" before "going public."  ¶¶ 48-51.  In addition, the CWs lack personal knowledge about the practices on which they purport to report.  CW2 recalls *only* a "channel partner program" designed to "enable quick deliveries" for "select channel partners"—*not* the "channel stuffing" practices Plaintiff complains of—whereas CW3 was "not directly involved" in such practices, and his reports are based *solely* on "rumors" he "heard" from unspecified "sales staff."  ¶¶ 48, 51; *see also Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 217 (2d Cir. 2010) (discounting CW allegations lacking personal knowledge).

*Shipping practices*.  Relying on CW4, Plaintiff alleges that Latch circumvented GAAP by recognizing revenue on hardware shipped to a "warehouse it controlled … without any evidence of transfer to a bona fide buyer."  ¶ 55.  CW4 does not allege when this practice allegedly occurred,

and this Court has previously rejected nearly identical allegations. *See Gavish*, 2004 WL 2210269, at *18 (dismissing "unspecific" CW reports that "at some unspecified time" Revlon "shipped 'many shipments' to Safeway that Safeway had not ordered").

*Consignment sales*.  Plaintiff finally asserts, based on CW3's reports, that Latch violated GAAP by recognizing revenue on shipped goods while allowing customers the right to return certain products.  ¶¶ 78-80.  "Granting a right of return, however, is not fraudulent unless the seller fails to disclose the practice or, if it is disclosed, fails to maintain adequate reserves for expected returns in accordance with GAAP or the company's stated revenue recognition policy." *Gavish*, 2004 WL 2210269, at *14.  As Plaintiff conceded in now-deleted allegations from the Complaint (*see* ECF No. 55 ¶ 59), Latch did not fail to disclose the practice in question nor maintain adequate reserves for expected returns.  Ex. 1 at 75.

## 2.    Plaintiff's Allegations Do Not Establish Subjective Falsity

Even if Plaintiff could plead objective falsity (it does not), Plaintiff still fails to plead any facts showing any Defendant *subjectively* believed Latch's revenue recognition to be false, as required to show that Latch's opinion statements are actionable under *Omnicare*.  575 U.S. at 188-89.  Latch's announced intention to restate financials after the last Challenged Statement does not show that Defendants' prior accounting judgments were made with fraudulent intent, or with knowledge of their falsity.  "[A] restatement is simply a correction, after the fact, of an accounting or other error in financial results" that "does not suggest knowledge or intent to misstate when the financial results were originally published"—particularly where, as here, "the error was a matter of judgment." *See In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *17 (S.D.N.Y. Sept. 29, 2022); *see also In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *18 (S.D.N.Y. Oct. 25, 2017) (no subjective falsity without "internal reports, documents, or communications" showing "Defendant's knowledge of … accounting practices").

15

### B.      The Challenged Statements About Internal Controls Were Not False

Plaintiff separately challenges four of Defendants' SOX certifications regarding Latch's internal controls over financial reporting claiming they omitted material weaknesses in Latch's revenue recognition.  App. A (Stmts. 11, 14, 17, 22).  These certifications are "statements of opinion."  *DeCarlo*, 80 F.4th at 176.  To establish liability under an omissions theory, Plaintiff must plead particularized facts showing that Defendants "omit[ted] material facts" underlying the basis for their opinions, which "conflict with what a reasonable investor would take from the statement."  *Omnicare*, 575 U.S. at 188-89.  This "is no small task," and Plaintiff comes nowhere close to making this showing.  *Finger v. Pearson PLC*, 2019 WL 10632904, at *9 (S.D.N.Y. Sept. 16, 2019).

Plaintiff admits that Latch disclosed, and Defendants attested to, "material weaknesses in [Latch's] internal control over financial reporting" for each Class Period quarter, which, "[i]f not corrected … could result in a material misstatement of our … financial statements."  ¶¶ 122, 127, 131, 138; Ex. 1 at 24-25.  Plaintiff nonetheless faults Defendants for not providing *more* information about the disclosed weaknesses, including that they pertained to Latch's allegedly improper revenue recognition practices.  But Plaintiff does not explain how Latch's statement that it *suffered a material weakness* with respect to its financial reporting "was rendered misleading due to the nondisclosure of the alleged additional [revenue recognition] weakness."  *Rok v. Identiv, Inc.*, 2017 WL 35496, at *7 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom. Cunningham v. Identiv, Inc.*, 716 F. App'x 663 (9th Cir. 2018).  Nor can it; Latch told investors it may "identify … new material weaknesses," which could limit Latch's "ability to prevent or detect a misstatement" of its financials.  Ex. 1 at 25; Ex. 2 at 57.

### C.      Latch's Statements of Corporate Optimism Are Not Actionable

Schoenfelder's two statements "tout[ing]" Latch's "powerful" or "record" results, App. A (Stmts. 8, 12), constitute nonactionable puffery, *i.e.*, "optimistic statement[s] that [are] so vague, broad, and non-specific that a reasonable investor would not rely on [them]."  *In re Nokia Corp. Sec. Litig.*, 2021 WL 1199030, at *17 (S.D.N.Y. Mar. 29, 2021); *see also In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017), *aff'd sub nom. In re Hertz Glob. Holdings Inc*, 905 F.3d 106 (3d Cir. 2018) (statements about "strong" and "record" financial results are puffery).

### D.   Latch's Forward-Looking Statements Are Not Actionable

Latch's four statements reporting bookings (App. A (Stmts. 4, 7, 11, 15) ("Bookings Statements") are protected by the PSLRA's safe harbor, which immunizes from liability forward-looking statements that are accompanied by meaningful cautionary language or not made with "actual knowledge" of falsity.  *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 535 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016); 15 U.S.C. § 78u-5(i)(1).

Plaintiff concedes that the Bookings Statements spoke to Latch's "*future* revenue prospects."  ¶ 12.  Indeed, Latch reported bookings to provide "visibility" into its "demand planning" and revenue "forecasting."  Ex. 1 at 10, 48; *In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 2013 WL 3295951, at *15 (S.D. Fla. Apr. 19, 2013) ("bookings were simply a preliminary indication of [revenue] in the future" and thus forward-looking).  They are indisputably forward-looking.

The Booking Statements were also accompanied by meaningful cautionary language.  15 U.S.C. § 78u-5(c)(1)(A).  Latch's public filings explained that Latch "might not realize all or any part of the anticipated contract value reflected in our Total Bookings," that "the number of booked units" may not "convert into actual deliveries," and that "construction delays" caused by the COVID-19 pandemic may "disrupt our hardware deliveries" and impact the conversion of

17

bookings into revenue.  Ex. 1 at 22, 34-35, 48.  These are precisely the types of "extensive and specific" factors that courts find meaningfully cautionary.  *Gray v. Wesco Aircraft Holdings, Inc*., 454 F. Supp. 3d 366, 392 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021).

Plaintiff also cannot point to a single fact showing Defendants had "actual knowledge" that the forward-looking Booking Statements were false or misleading.  *See Slayton v. Am. Express Co*., 604 F.3d 758, 766 (2d Cir. 2010); 15 U.S.C. § 78u-5(c),(i); *infra* § III.C.

## VI.    PLAINTIFF FAILS TO ALLEGE FACTS ESTABLISHING A VIOLATION OF ANY SEC REGULATIONS

Plaintiff also fails to state a claim based on alleged violations of Regulation S-K Items 303 and Item 10(e), and Regulation G.  ¶¶ 74-77, 85-86.[3]  Plaintiff first contends that Defendants violated Item 303 because Latch failed to disclose the "effects of 'channel stuffing' programs … on its revenues or income."  ¶¶ 75-77.  Plaintiff fails to allege any improper "channel stuffing" practices (*supra* § III.B.1); but even if it could, Item 303 requires only the disclosure of "*known*" trends or uncertainties that are "*reasonably likely*" to materially impact revenue.  17 C.F.R. § 229.303(b)(2)(ii).  The Complaint contains no facts showing either:  Plaintiff does not allege that any Defendant had "actual knowledge" of the purported channel stuffing practices during the Class Period.  *Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*, 2010 WL 148617, at *9 (S.D.N.Y. Jan.

---

[3] The United States Supreme Court is reviewing whether a violation of Item 303 provides a private right of action.  *See Macquarie Infrastructure Corp. v. Moab Partners, L.P*., 2023 WL 3778765 (U.S. May 30, 2023), *cert. granted,* 2023 WL 6319659 (U.S. Sept. 29, 2023). Defendants do not waive and expressly reserve the right to seek dismissal of Plaintiff's Item 303 claim should the Supreme Court conclude (as courts in other judicial circuits have) that there is no private right of action to pursue such a claim.

14, 2010).  Nor does Plaintiff allege what impact, if any, such purported practices had on revenue—let alone a material one.

Plaintiff next contends that Latch's failure to "reduce its bookings to reflect" "discounts" violated Item 10(e).  ¶ 86.  But "Item 10(e) by its terms relates to non-GAAP *liquidity measures*," *i.e.*, whether "some portion of a company's *current cash* cannot be used for other purposes, because it is or will be needed to satisfy some pre-existing obligation."  *Ironworkers Loc. 580--Joint Funds v. Linn Energy, LLC*, 29 F. Supp. 3d 400, 431 (S.D.N.Y. 2014).  As Plaintiff concedes, bookings pertain to "future revenue prospects," not current cash or liquidity.  ¶ 12.  Plaintiff's claim thus "makes absolutely no sense."  *Linn Energy*, 29 F. Supp. 3d at 431.

Finally, "a violation of Regulation G does not constitute an independent basis for liability under the securities laws."  *Id.* at 429 (citing 17 C.F.R. § 244.102)**.**

## VII.   PLAINTIFF FAILS TO PLEAD FACTS ESTABLISHING A STRONG INFERENCE OF SCIENTER

The Complaint is also deficient because it fails to allege with particularity that any Defendant acted with the requisite "strong inference" of scienter—*i.e.*, an "intent to deceive, manipulate, or defraud."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 319 (2007); 15 U.S.C. § 78u-4(b)(2).  This is a high bar for a plaintiff to meet, and requires particularized facts showing either (i) "motive and opportunity to commit fraud"; or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  Plaintiff comes nowhere close to satisfying this exacting standard.

### A.   Plaintiff Alleges a Motiveless Fraud

Notably absent from the Complaint is a single particularized fact showing *any* Defendant acted with motive and opportunity.  In fact, the word "motive" is not mentioned once.  Plaintiff

does not allege that any Defendant sold stock while employed during the Class Period, a failure which "fatally undermines" Plaintiff's scienter allegations. *Russo v. Bruce*, 777 F. Supp. 2d 505, 518 (S.D.N.Y. 2011).

> **B.      Plaintiff's Allegations Do Not Provide Strong Circumstantial Evidence of Fraud**

Having failed to establish motive, Plaintiff's allegations of conscious misbehavior or recklessness as to each Defendant "must be correspondingly greater" to show a strong inference of scienter. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). Such recklessness "must approximate 'actual intent'" and represent "an extreme departure" from ordinary care. *In re Gen. Elec. Sec. Litig.*, 844 F. App'x 385, 388-89 (2d Cir. 2021). The Complaint contains no particularized facts meeting this high bar—in fact, it barely mentions Schoenfelder, Mitchell, or Schaeffer at all. Despite including observations from four CWs, *none* is alleged to have had any contact with any Defendant during the Class Period, and thus cannot speak to their states of mind. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) (rejecting CW reports without allegations they "met" or had "personal contact" with defendants). Only *one* paragraph of the 187-paragraph Complaint is remotely related to scienter—and only generically alleges Defendants' "access" to data, "high-level executive[]" positions, and purported "participat[ion]" in Latch's revenue recognition practices. ¶ 178. None establishes a strong inference of scienter.

To start, allegations that Defendants had "access" to "internal reports and other data and information about the Company's finances, operations, and sales" (*id.*) are "too vague to support an inference of scienter." *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021). Plaintiff does not "identify the reports" to which Defendants allegedly had access, explain how they contradicted the Challenged Statements, or plead that Defendants ever

20

reviewed such reports.  *Chen v. X Fin.*, 2021 WL 7449851, at *11 (E.D.N.Y. Dec. 9, 2021).

Likewise, "occup[ying] high-ranking positions … is insufficient to establish scienter."  *Cox v.*

*Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016).  And finally, Defendants' alleged

"participat[ion] in the creation, development and reporting of the Company's revenue recognition

practices" (¶ 178) says nothing about the nature of their involvement or, critically, whether they

knew of specific facts contradicting the Challenged Statements before they were made.  *See City*

*of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 473 (S.D.N.Y. 2008) (rejecting

"allegation[s] that 'knowledge of the accounting improprieties may be imputed to [those] involved

in the day-to-day operations of the company'").[4]

### C.    The Far More Compelling Inference Is Good Faith, Not Fraud

Courts require dismissal where the "inference of fraudulent intent is not 'at least as

compelling as any opposing inference one could draw.'"  *Slayton*, 604 F.3d at 777.  That is exactly

the case here.  According to Plaintiff, Defendants:

- knew as early as May 2021 that Latch's revenue recognition practices were deficient, resulting in materially overstated revenue;

- repeatedly cautioned investors about the weakness in Latch's internal controls and risks to the reliability of its financial statements, but intentionally omitted disclosure of *more* weaknesses;

- concealed the truth from investors until August 2022 when Latch disclosed that it had identified errors with certain reporting practices; and

- intentionally delayed filing the restatement and complying with Nasdaq's listing rules, to Latch's own detriment.

---

[4] Because Plaintiff fails to "plead scienter with respect to any" Defendant and "assert[s] no

specific corporate scienter allegations," its allegations against Latch also fail.  *Kasilingam v.*

*Tilray, Inc.*, 2021 WL 4429788, at *13 (S.D.N.Y. Sept. 27, 2021).

Yet all the while, no Defendant is alleged to have sold stock or otherwise gained from the alleged fraud. Plaintiff's alleged motiveless, profitless fraud undermines any inference of scienter—let alone a strong, cogent, and compelling inference. *See Kalnit*, 264 F.3d at 140 (rejecting "nonsensical" scienter allegations that "defie[d] economic reason").

Instead, there is a more compelling, nonfraudulent explanation. Latch was a fast-growing company that recognized—and *disclosed throughout the Class Period*—that it lacked sufficient experience, processes, and personnel over financial reporting, which resulted in deficient internal controls. *E.g.*, Ex. 1 at 24-25. Latch told investors that, "if not corrected," these weaknesses "could affect the reliability of our consolidated financial statements." *Id.* Latch sought to remediate the disclosed weaknesses with help from independent consultants, and updated investors on its progress. *Id.* Yet it had not done so in time to prevent *some* sales personnel from failing to report certain terms of their specific sales agreements with *some* customers. And when Latch became aware of these issues, it retained external counsel, initiated an internal investigation, and promptly informed investors that its prior financial statements contained revenue recognition errors and should not be relied upon—even though it had not yet identified precisely what those errors were nor the revenue impact they would cause. *See Plumbers & Pipefitters Loc. Union No. 719 Pension Tr. Fund v. Conseco Inc.*, 2011 WL 1198712, at *22 (S.D.N.Y. Mar. 30, 2011) (no fraud where defendants "apprise[d] the market" of internal controls weaknesses and need for restatement). Even as its deadline to regain compliance with Nasdaq listing rules was fast approaching, Latch prioritized accuracy over expediency—to its own detriment. That shows good faith and prompt disclosure, not fraud.

## VIII. MANY OF THE ALLEGED CORRECTIVE DISCLOSURES ARE INSUFFICIENT TO SUPPORT LOSS CAUSATION

For most of the alleged corrective disclosures that Plaintiff identifies (¶¶ 144-159), Plaintiff fails to plead that any "proximately caused the plaintiff's economic loss."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 346-47 (2005).  Indeed, all either repeated already-public information or information unrelated to the alleged fraud, or caused Latch's stock price to *increase*, which could not have caused Plaintiff any purported loss.  *GE Invs. v. Gen. Elec. Co*., 447 F. App'x 229, 231 (2d Cir. 2011) (no loss causation where "stock price increased" after alleged corrective disclosure); Ex. 6.

Plaintiff attempts to connect only one purported disclosure to a subsequent stock drop: Latch's August 1, 2023 announcement that because it would not file a restatement by August 4, 2023—"due to unexpected delays"—it would be delisted from Nasdaq.  ¶ 157.  But this announcement did not correct any Challenged Statement, all of which long predate the imposition of Nasdaq's requirement that Latch issue restatements by August 4, 2023.  Latch had also already made clear in past filings that it could offer "no assurance" that it would meet the August 4, 2023 deadline.  Ex. 9 at 2.  Even if Latch's August 1, 2023 announcement revealed disappointing news, it did not "expos[e] the falsity of [any] fraudulent representation" as required to plead loss causation.  *In re Omnicom Grp., Inc. Sec. Litig*., 541 F. Supp. 2d 546, 551 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010).

## IX.    PLAINTIFF FAILS TO PLEAD A SECTION 20(a) CLAIM

Because Plaintiff fails to state a predicate violation of the Exchange Act, the Section 20(a) claim must be dismissed.  *See Philip Morris*, 2023 WL 8883457, at *13.

## X.    CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated:   December 28, 2023
         San Diego, California

                              LATHAM & WATKINS LLP

                              By: */s/ Colleen C. Smith*
                                  Colleen C. Smith (admitted *pro hac vice*)
                                  12670 High Bluff Drive
                                  San Diego, California 92130
                                  Tel: (858) 523-5400
                                  Fax: (858) 523-5450
                                  Email: colleen.smith@lw.com

                                  Michele D. Johnson (admitted *pro hac vice*)
                                  Kristin N. Murphy (admitted *pro hac vice*)
                                  650 Town Center Drive, 20th Floor
                                  Costa Mesa, California 92626
                                  Tel: (714) 540-1235
                                  Fax: (714) 755-8290
                                  Email: michele.johnson@lw.com
                                  Email: kristin.murphy@lw.com

                                  *Attorneys for Defendants Latch, Inc. f/k/a TS*
                                  *Innovation Acquisitions Corp., Luke*
                                  *Schoenfelder, Garth Mitchell, and Barry*
                                  *Schaeffer*

24

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify that this memorandum of law contains 6,999 words, as counted by Microsoft Word, excluding the cover page, this certification of compliance, the table of contents, the table of authorities, and the signature block, and that it complies with the formatting rules set forth in Section II.D of the Individual Practices of Judge John G. Koeltl.

Dated:  December 28, 2023
        San Diego, California

<u>*/s/ Colleen C. Smith*</u>
Colleen C. Smith