**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SLATER BRENNAN, Individually and On
Behalf of All Others Similarly Situated,

     Plaintiff,

     v.

LATCH, INC. f/k/a TS INNOVATION
ACQUISITIONS CORP., LUKE
SCHOENFELDER, GARTH MITCHELL, and
BARRY SCHAEFFER,

     Defendants.

Case No. 1:22-cv-07473-JGK

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................1

II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT ..............................2

     A.     Procedural History .........................................................................2

     B.     Settlement Negotiations ...................................................................3

III.   THE COURT SHOULD PRELIMINARILY CERTIFY THE PROPOSED
     SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY ...........................4

     A.     Numerosity .....................................................................................5

     B.     Commonality ..................................................................................5

     C.     Typicality .......................................................................................6

     D.     Adequacy ........................................................................................7

          1.     Adequacy of the Proposed Class Representative ...................7

          2.     Rule 23(g) Adequacy of the Proposed Class Counsel ............8

     E.     Common Questions Predominate, and a Class Action Is Superior to Other
          Methods of Adjudication ..............................................................9

IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ..........11

     A.     Standards for Preliminary Approval................................................11

     B.     The Settlement Is Procedurally and Substantively Fair ...................13

     C.     Public Policy Favors Settlement of Securities Class Actions............13

     D.     The Settlement Is Fair, Reasonable, and Adequate in Light of the Factors Outlined
          by Rule 23(e)(2) and the Remaining *Grinnell* Factors.....................14

          1.     Plaintiff and Lead Counsel Have Adequately Represented the Class .....14

          2.     The Proposed Settlement Is the Result of Good Faith, Arm's-Length
              Negotiations by Informed, Experienced Counsel ................14

3.    The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal, Support Preliminary Approval .............15

a)    The Complexity, Expense, and Likely Duration of the Litigation 16

b)    The Risk of Establishing Liability and Damages ......................17

4.    The Proposed Method for Distributing Relief Is Effective...................18

5.    Attorneys' Fees, Litigation Expenses, and Award to Plaintiff ..............19

6.    The Settling Parties Have Agreed to a Confidential Agreement Regarding Opt-Outs .....................................................................................19

7.    The Plan Treats Each Settlement Class Member Equitably Relative to Each Other ....................................................................................20

8.    The Remaining *Grinnell* Factors Support Preliminary Approval ..........21

V.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS...................................................................................23

VI.    PROPOSED SCHEDULE OF EVENTS.................................................25

VII.    CONCLUSION ...............................................................................25

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ............................... 9

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................................... 4, 10

*Baker v. SeaWorld Ent., Inc.*,
No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ......................... 23

*Cagan v. Anchor Sav. Bank FSB*,
No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................ 16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ................................................................................................ 5

*Christine Asia Co. v. Yun Ma*,
No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................ 8, 20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ......................................................................................... 12, 16

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004) .................................................................................. 23

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ................................................................................................. 5

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................................................... 18, 20

*Espinoza v. 953 Assocs. LLC*,
280 F.R.D. 113 (S.D.N.Y. 2011) .......................................................................................... 9

*Fogarazzao v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005) .......................................................................................... 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990) ................................................................................................ 7

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .............................. 19

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................................. 20

iii

*In re "Agent Orange" Prod.* Liab. Litig.,
    597 F. Supp. 740 (E.D.N.Y. 1984) ............................................................... 22

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................ 23

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................... 16, 22

*In re China MediaExpress Holdings, Inc. S'holder Litig.*,
    No. 11-CV-0804 (VM), 2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) ............................ 19

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) .......................................................... 11, 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................... 5, 6, 7, 13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    312 F.R.D. 332 (S.D.N.Y. 2015) ............................................................... 6

*In re Fuwei Films Sec. Litig.*,
    247 F.R.D. 432 (S.D.N.Y. 2008) ............................................................... 8

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................... 6, 21, 22

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................... 13

*In re Indep. Energy Holdings PLC*,
    No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ....................... 22

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................... 13

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................... 7, 10

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................... 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................... 12

*In re Platinum & Palladium Commodities Litig.*,
    No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) .............................. 12, 13

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................... 16

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ...................................................................... 5

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............... 16, 19

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................... 17

*In re Take Two Interactive Sec. Litig.*,
    No. 06 CIV. 1131 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010) ...................... 20

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ..................................................................... 5, 6

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) .......................................................................... 6

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ....................................................................... 5

*Lea v. Tal Educ. Grp.*,
    No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ...................... 13, 19

*Leung v. Home Boy Rest. Inc.*,
    No. 07CIV8779RJSDFE, 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ...................... 14

*Marisol A. by Forbes v. Giuliani*,
    929 F. Supp. 662 (S.D.N.Y. 1996) ................................................................... 6

*Martinek v. Amtrust Fin. Servs., Inc.*,
    No. 19 CIV. 8030 (KPF), 2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022) ...................... 19

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010) ....................................................................... 4

*Mikhlin v. Oasmia Pharm. AB*,
    No. 19CV4349NGGRER, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ...................... 15

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................... 16

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) .......................................................................... 22

*Palacio v. E\*TRADE Fin. Corp.*,
   No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419 (S.D.N.Y. June 22, 2012)........................ 13

*Pasini v. Fishs Eddy, LLC*,
   No. 1:16-CV-00354-PGG, 2018 WL 6843905 (S.D.N.Y. Nov. 15, 2018)............................ 20

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)......................................................................................... 5

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 CIV 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................................. 23

*Vargas v. Cap. One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) .................................................................................... 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................... 14

*Xuechen Yang v. Focus Media Holding Ltd.*,
   No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ........................ 22

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)............................... 8

**Statutes**

15 U.S.C. § 78u-4(a)(7) .......................................................................................... 23, 24

15 USC §§ 78j(b) and 78t(a)......................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... 1, 2, 14, 23

Fed. R. Civ. P. 23(a) ............................................................................................ passim

Fed. R. Civ. P. 23(a)(1)................................................................................................ 5

Fed. R. Civ. P. 23(a)(3)................................................................................................ 6

Fed. R. Civ. P. 23(a)(4)................................................................................................ 7

Fed. R. Civ. P. 23(b)(3) ........................................................................................ passim

Fed. R. Civ. P. 23(b)(3)(D) ..................................................................................... 4, 10

Fed. R. Civ. P. 23(c)(2)............................................................................................... 23

Fed. R. Civ. P. 23(e) ............................................................................................ passim

Fed. R. Civ. P. 23(e)(1) ................................................................................. 11

Fed. R. Civ. P. 23(e)(1)(A)-(B)(i) ................................................................. 14

Fed. R. Civ. P. 23(e)(2) ...................................................................... 11, 12, 14

Fed. R. Civ. P. 23(e)(2)(A)-(D) ..................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................ 15

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................... 19

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................ 20

Fed. R. Civ. P. 23(e)(3); and (D) .................................................................. 11

Fed. R. Civ. P. 23(g) .................................................................................. 7, 8

Fed. R. Civ. P. 23(h)(1) ................................................................................. 24

**Regulations**

17 C.F.R. § 240.10b-5 ..................................................................................... 3

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 (1986) ............... 9

*Manual for Complex Litigation* (Fourth) § 21.632 .......................................... 4

Newberg on Class Actions § 11:25 (4th ed. 2002) ......................................... 11

Pursuant to Fed. R. Civ. P. 23, Lead Plaintiff VP PTC Establishment as Trustee of Gersec Trust ("Plaintiff") respectfully submits this memorandum in support of its Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I.    INTRODUCTION[1]

Plaintiff and Defendants, Latch, Inc. ("Latch" or "Company"), Luke Schoenfelder, Garth Mitchell, and Barry Schaeffer (together, "Defendants"), have agreed to settle the Action for $1,950,000 by the terms stated in the Stipulation and Agreement of Settlement ("Stipulation"). By this motion, Plaintiff respectfully requests the Court enter an order: (1) preliminarily certifying the Settlement Class for the purposes of the Settlement; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement; and (4) scheduling a Settlement Hearing ("Final Approval Hearing") at which the Court will consider the request for final approval of the Settlement, the Plan of Allocation (the "Plan") of Settlement proceeds, the request for attorneys' fees, expenses and a compensatory award to Plaintiff, and entry of the Final Judgment.

F.R.C.P Rule 23 governs the Action, and Rule 23(e) requires court approval for settlement. As a result, typically, after the parties to a class action such as this one agree to settle the case subject to Court approval, the plaintiff moves the Court for preliminary approval. At this stage, the Court preliminary certifies the Settlement Class pursuant to Rule 23(a) and, in this case, Rule 23(b)(3). The Court also determines preliminarily whether the Settlement is fair and reasonable, in essence ensuring at this stage that it is non-collusive and likely to receive final approval. The Court additionally approves the form and content of notice to the Settlement Class, which is

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement ("Stipulation") dated as of November 12, 2024 and filed herewith.

required by Rule 23(e), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process, and schedules a final approval hearing to be held after the lead plaintiff has notified the class and the class members have had an opportunity to object to the proposed settlement or to opt out of it.

The $1,950,000 settlement is fair, reasonable, and adequate, particularly when measured against the real risk of recovering less—or nothing at all. And the Settlement was reached after weeks of good faith, arm's-length negotiations. The immediate cash settlement provides a guaranteed recovery for Settlement Class Members. This is a favorable outcome as the Settlement provides approximately 7% of Plaintiff's estimated maximum per share damages, and in light of material obstacles that Plaintiff faced to ongoing litigation. Indeed, Defendants have argued that the operative complaint fails to state any viable claim, and that the challenged statements about Latch's revenue reporting and recognition practices and internal controls were true and made in good faith. Had litigation continued, Defendants would have continued to press these and other arguments to drastically reduce or eliminate any recovery.

Plaintiff believes that the proposed Settlement is fair, reasonable, and adequate, and in the Settlement Class Members' best interest. Similarly, the proposed content and manner of providing notice satisfy Rule 23's mandate, the PSLRA, and due process. Thus, the Court should preliminarily approve the Settlement, preliminary certify the Settlement Class, and authorize the dissemination of the class notice.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    **Procedural History**

On August 31, 2022, Slater Brennan filed the initial complaint, asserting securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 USC §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5

promulgated thereunder (17 C.F.R. § 240.10b-5). (ECF No. 1). On January 17, 2023, the Court appointed Plaintiff as Lead Plaintiff, and approved Plaintiff's selection of The Rosen Law Firm, P.A., as lead counsel. (ECF No. 44).

On October 24, 2023, Plaintiff filed the Amended Class Action Complaint. (ECF No. 55). On November 14, 2023, the Court ordered that Defendants would answer, move to dismiss, or otherwise respond to the Amended Complaint by November 21, 2023. If Defendants moved to dismiss, Lead Plaintiff would either file an opposition to Defendants' motion or file another amended complaint in response by December 5, 2023. (ECF No. 61). On November 21, 2023, Defendants moved to dismiss the Amended Complaint. (ECF No. 62-66). On December 5, 2023, Lead Plaintiff filed the Second Amended Consolidated Complaint (the operative "Complaint"), asserting claims against Latch, Mr. Schoenfelder, Mr. Mitchell, and Mr. Schaeffer under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder, and against the individual defendants under Section 20(a) of the Exchange Act. (ECF No. 69). On December 28, 2023, Defendants moved to dismiss the Complaint. (ECF No. 72-76). On January 18, 2024, Lead Plaintiff opposed Defendants' motion to dismiss the Complaint. (ECF No. 77-78). On February 1, 2024, Defendants filed their reply in further support of their motion to dismiss the Complaint. (ECF No. 81-82). On August 9, 2024, the Court ordered the parties to appear for oral argument on September 13, 2024. (ECF No. 85). On September 6, 2024, the Court granted a request from the parties to continue oral argument, adjourning argument to September 23, 2024. (ECF No. 87).

**B.    Settlement Negotiations**

After Plaintiff filed the Amended Complaint, the parties initially engaged in arm's-length discussions concerning a mediation towards the class-wide resolution of the action. While the parties were not able to agree to mediate at that time, in August 2024, shortly before the Court

scheduled oral argument on Defendants' motion to dismiss, the parties reengaged in discussions, which became direct arm's-length negotiations. The parties reached an agreement in principle on September 11, 2024, and notified the Court on September 16, 2024. (ECF No. 88). On September 19, 2024, the Court withdrew Defendants' pending motion to dismiss without prejudice and granted the parties' request to stay all proceedings in the Action, pending its consideration of Plaintiff's anticipated motion for preliminary approval of the Settlement. (ECF No. 90). The parties signed a settlement term sheet on September 24, 2024.

## III.   THE COURT SHOULD PRELIMINARILY CERTIFY THE PROPOSED SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY

In preliminarily approving the proposed Settlement, this Court will first consider whether to certify the Settlement Class under Rules 23(a) and (b)(3). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Courts in this Circuit have long acknowledged the propriety of certifying a class solely for settlement purposes. *See, e.g., Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 88 (D. Conn. 2010), citing *Amchem*, 521 U.S. at 618. Before granting preliminary approval, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Amchem,* 521 U.S. at 620; *Manual for Complex Litigation* (Fourth) § 21.632. The Court must determine whether the four threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, a damages class action must be maintainable under Rule 23(b)(3), which requires a class to meet two additional requirements: (1) predominance; and (2) superiority. *Id.* at 614. In certifying the Settlement Class, the Court need not determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Further, at this point, the Court need not conduct a rigorous analysis to determine definitively whether to certify a settlement class but should reserve

4

that ultimate analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). The proposed Settlement Class meets the requirements of and satisfies Rules 23(a) and 23(b)(3).

### A.    Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Plaintiff must only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Moreover, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and were traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).[2] Here, there are likely thousands of potential Class Members and millions of shares of Latch common stock were publicly traded on NASDAQ during the Settlement Class Period. Thus, the numerosity requirement is met.

### B.    Commonality

Commonality requires that "questions of law or fact [are] common to the class." *EVCI*, 2007 WL 2230177, at *13. Securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *Id*; *Vivendi*, 242 F.R.D. at 84.

---

[2] *See also In re Vivendi Universal, S.A.,* 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007) (numerosity requirement is generally met in cases involving nationally traded securities.).

Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct, such as making misrepresentations in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015). Here, commonality is met due to common questions of law and fact pertaining to whether Defendants made false statements of material fact in Latch's public filings or during earnings calls with investors, whether Latch omitted material information from its public statements, whether the statements were made with scienter, the extent of damages per share that Settlement Class Members sustained, if any, and the appropriate measure of damages.

### C.    Typicality

The Rule 23(a)(3) typicality requirement is fulfilled when "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). "Typical" does not mean identical. *EVCI*, 2007 WL 2230177, at *13; *Vivendi*, 242 F.R.D. at 85 ("[P]laintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render

his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). The critical question is whether the proposed class representatives and the class can point to Defendants' "common course of conduct" to support a claim for relief. Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).

Plaintiff alleged a common course of unlawful conduct affecting all Settlement Class Members. Each purchased Latch common stock during the Settlement Class Period based on Defendants' allegedly materially false and misleading statements and suffered harm in the same manner. Plaintiff's claims stand or fall with those of the Settlement Class, and thus they are typical.

### D.    **Adequacy**

Rule 23(a)(4) requires that the representative party fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, a showing that the interests of the representative party will not conflict with the interests of Settlement Class Members, and second, that the representative party's counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *EVCI*, 2007 WL 2230177, at *13. Plaintiff is adequate if its interests do not conflict with those of the class. *Marsh & McLennan*, 2009 WL 5178546, at *10. Pursuant to Rule 23(g), adequacy of proposed class counsel is considered separately from adequacy of the proposed class representative. Both prongs of the adequacy requirement are satisfied here.

### 1.    **Adequacy of the Proposed Class Representative**

Plaintiff does not have interests antagonistic to those of the proposed Settlement Class

Members. The proposed class representative purchased Latch common stock during the Settlement Class Period and claims to have been damaged thereby. The proposed class representative seeks, on its own behalf and on behalf of all Settlement Class Members, to recover from Defendants damages caused by Defendants' allegedly unlawful conduct. Since Plaintiff's interests are congruent with the interests of other Settlement Class Members, the Court should appoint Plaintiff as Class Representative for the Settlement Class.

## 2.    **Rule 23(g) Adequacy of the Proposed Class Counsel**

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Lead Counsel has successfully prosecuted numerous securities class actions in this Circuit and throughout the country. Courts have consistently found Rosen Law to be well suited as class counsel in securities class actions. *See Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (In considering approval of the $250 million Alibaba securities settlement, the Court stated that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case …").[3] Lead Counsel's firm resume, documenting its experience, was previously filed as ECF No. 22-4.

---

[3] *See also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 429 (S.D.N.Y. 2008) ("[T]he Rosen Law firm is well-qualified to serve as lead counsel in this matter."); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation").

Lead Counsel's significant securities class action experience makes it knowledgeable and capable of evaluating when a settlement is beneficial to investors, or when the prudent course would be to continue litigation. Plaintiff achieved the Settlement after Lead Counsel conducted a thorough investigation, retained a private investigator and experts, drafted two amended complaints, opposed Defendants' motion to dismiss, and thoroughly evaluated the case's strengths and weaknesses. This Court should appoint Lead Counsel as Class Counsel for the Settlement Class.

E.    **Common Questions Predominate, and a Class Action Is Superior to Other Methods of Adjudication**

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff satisfies the predominance and superiority criteria.

"The focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). When common questions are a significant aspect of a case and can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Here, common questions predominate over individual issues, exemplified by the fact that, if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. This

case illustrates the principle that the predominance requirement is "readily met" in securities fraud class actions. *Amchem*, 521 U.S. at 625.

Pursuant to Fed. R. Civ. P. 23(b)(3), the factors relevant to a finding of superiority include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[4]

This Court should balance the merits of certifying a settlement class against other methods of adjudication. Given the complex nature of securities class actions, the large numbers of geographically dispersed class members, and the high costs associated with individualized actions, it is unlikely that most Settlement Class Members would be able to obtain relief without class status. Without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several hundreds of thousands of dollars, have no practical recourse. The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12. Moreover, Settlement Class Members who desire to pursue individualized actions have the option to opt out of the Settlement. Thus, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). Accordingly, the Court should preliminarily certify the Settlement Class for settlement

---

[4] As this is a settlement in lieu of a trial, the Rule 23(b)(3)(D) inquiry is not required. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

purposes only, consisting of:

> all Persons that purchased or otherwise acquired Latch common stock between June 7, 2021, and August 1, 2023, inclusive ("Class Period"). Excluded from the Settlement Class are (i) Defendants; (ii) the officers and directors of Latch and its affiliates and subsidiaries; (iii) members of the officers' and directors' immediate families and their legal representatives, heirs, successors or assigns; and (iv) any entity in which Defendants have or had a controlling interest. Also excluded from the Settlement Class is each Opt-Out.

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.    <u>Standards for Preliminary Approval</u>

Pursuant to Rule 26(e), courts should approve class action settlements when they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013). For preliminary approval, "courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). The preliminary evaluation's purpose is to identify "terms [that] are unacceptable at the outset" and that would render "notice to the class, with its attendant expenses, and a hearing . . . futile gestures." Newberg on Class Actions § 11:25 (4th ed. 2002).

Pursuant to Rule 23(e)(1), the Court must consider whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2)—which governs final approval—requires courts to consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

> (2)    ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Additionally, in evaluating a settlement, the Second Circuit directs courts to consider the *Grinnell* factors: (1) complexity, expense, and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).[5] Courts however, do not "engage in a complete analysis at the preliminary approval stage . . . . [A]s other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Payment Card*, 330 F.R.D. at 30 n.24 (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—are premature at this stage. *Id.*

The Settlement merits preliminary approval, and the Court should approve the Settling Parties' requested form, manner and schedule for notice, final approval, and related events because these will fairly apprise the Settlement Class of the Settlement terms and give them adequate opportunity to file claims in, submit objections to, or exclude themselves from, the Settlement.

---

[5] The Rule 23(a) factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Thus, in determining whether a settlement will likely be approvable under Rule 23(e)(2), the court "considers the Rule 23(e)(2) factors, and then considers additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *Id.*

12

**B.**  **The Settlement Is Procedurally and Substantively Fair**

In conducting a preliminary approval inquiry, a court considers both the "'negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *Platinum & Palladium*, 2014 WL 3500655, at *11. A settlement is procedurally fair when well-informed counsel engaged in arm's-length negotiations. *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021). Likewise, a settlements is substantively fair when the relief to the class is adequate after evaluating the Rule 23(e) and *Grinnell* factors. *Id.*, at *9. 'Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see also Platinum & Palladium*, 2014 WL 3500655, at *11. In this case, the Settlement is both procedurally and substantively fair.

**C.**  **Public Policy Favors Settlement of Securities Class Actions**

The law favors settlement in complex, class actions, because they require substantial judicial resources and consume the parties' time and money, and because resolving the claims through trial and appeals would entail significant delay. *See Palacio v. E*TRADE Fin. Corp.*, No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419, at *7 (S.D.N.Y. June 22, 2012).[6] "Absent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at *12. This strong judicial policy applies here.

---

[6] *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'").

**D.    The Settlement Is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors**

At this stage, courts undertake a preliminary review of the Rule 23(e)(2) factors in determining whether the Settlement merits granting preliminary approval and directing notice of the Settlement to be disseminated to the Class. *See* Rule 23(e)(1)(A)-(B)(i). Under Rule 23(e)(2), the Court may finally approve the Settlement "only on finding that it is fair, reasonable, and adequate after considering whether": (a) the Class was adequately represented; (b) the Settlement was negotiated at arm's length; (c) the relief to the Class is adequate; and (d) the Settlement treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). Further, because the amendments to Rule 23 did not displace the Second Circuit's existing *Grinnell* test, it is appropriate to consider the *Grinnell* factors that are not duplicative of Rule 23(e)(2): the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.

**1.    Plaintiff and Lead Counsel Have Adequately Represented the Class**

Plaintiff and Lead Counsel have diligently prosecuted this Action, including reviewing and investigating the facts in this case, which included retaining an investigator and experts, drafting several pleadings including the Complaint, responding to Defendants' motion to dismiss, and negotiating a favorable settlement that provides immediate recovery to Settlement Class Members.

**2.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel**

Courts initially presume that a settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)-*Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval

appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties…"). The Parties negotiated the settlement amount through discussions that were at all times hard-fought and at arm's-length between experienced counsel on both sides, producing a result that Plaintiff and Lead Counsel believe to be in the Settlement Class's best interest. The Settlement is fair, reasonable, and adequate and the Parties achieved it free of collusion.

### 3. The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal, Support Preliminary Approval

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). This section of Rule 23(e) "subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Mikhlin v. Oasmia Pharm. AB*, No. 19CV4349NGGRER, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (internal citations omitted).

The proposed Settlement provides a cash payment of $1,950,000 for the benefit of the Settlement Class. This is a favorable result, returning approximately 7% of Plaintiff's estimated maximum per share damages, especially given the significant risks of continued litigation in this case. More, the Settlement is a favorable outcome compared to settlements in other securities cases. According to NERA Economic Consulting Research, for cases that settled in 2023, the median ratio of settlement to investor losses was 1.8% of estimated damages. *See* Exhibit B to the Declaration of Leah Heifetz-Li ("Heifetz-Li Decl."). Thus, the recovery the Settlement provides well exceeds the median recovery realized in securities class action cases. It is also above

recoveries courts have declared reasonable. In fact, courts have regularly approved materially smaller settlements as fair and reasonable. *See Grinnell,* 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving, over objections, a class settlement that recovered 1.9% of the best possible recovery); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (granting final approval which amounted to 2% of potential recovery); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5%-6.2% of estimated losses). The Settlement therefore falls well within the range of possible approval.

### a)    The Complexity, Expense, and Likely Duration of the Litigation

"Courts recognize that '[s]ecurities class actions are generally complex and expensive to prosecute.'" *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases, are complex and challenging as regards both liability and damage"). The Settlement provides a guaranteed, immediate recovery. If the Settlement were not reached, the Settling Parties would have to incur substantial costs and engage in prolonged litigation through the resolution of Defendants' motion to dismiss, a motion for class certification, discovery, including document discovery, depositions, expert discovery, summary judgment, trial, and, possibly, subsequent appeals. Such costs could easily exceed

hundreds of thousands of dollars for Plaintiff.

First, Plaintiff faced risk from Defendants' motion to dismiss. More, even if the Action survived Defendants' motion to dismiss, while Plaintiff believes that the Settlement Class meets the requirements for certification, Defendants would certainly have opposed class certification, and there is a risk the Court would have denied certification, or shortened the class period based on issues related to falsity, scienter, and/or loss causation. Then, even if the Court certified the class, Plaintiff would still have faced challenges in developing facts to survive summary judgment or establish Defendants' liability at trial. More, even if Plaintiff could prevail at each stage of this litigation, given the extensive discovery that would be necessary to prove the case and the significant expert testimony required to establish liability, loss causation, and damages, there is no doubt that the continued prosecution of the Action would have been both time intensive and costly. These developments could also deprive the Class of any recovery for years.

The Settlement guarantees recovery for the Settlement Class and reduces overall litigation expenses. Even if Plaintiff was successful at each step through appeals after trial, continued litigation would be costly and take years. These factors favor the Settlement's approval.

### b) *The Risk of Establishing Liability and Damages*

There were substantial risks in the Action, and further prosecution might have yielded limited or no recovery. Indeed, it is well known that securities class action litigation is inherently complex. *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (stating that "class action suits in general have a well-deserved reputation as being most complex[,]" and that federal courts "have long recognized" that securities class action "litigation is notably difficult and notoriously uncertain[]"). This case is no exception.

There is a risk that the Court would have granted Defendants' motion to dismiss, either in

part, thereby reducing the scope of Plaintiff's claims, or in its entirety. For example, Defendants deny they made any actionably false and misleading statements, or did so with the requisite intent, and contend that Plaintiff will be unable to prove damages as a result of the allegedly fraudulent conduct. More, Defendants argue that the purported corrective disclosures that caused Latch's stock price to drop were not reflected in Defendants' alleged misstatements. As a result, Defendants would likely have argued that the Settlement Class's estimated damages were significantly lower than Plaintiff claims, or non-existent. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342–43 (2005) (to establish loss causation, plaintiffs must disaggregate the losses caused by the corrective disclosures from those caused by other factors).

Although Plaintiff believes it would be successful defeating Defendants' motion to dismiss and anticipated motion for summary judgment, there is no guarantee that the Court would have agreed for each element of a securities fraud claim. If the Action survived summary judgment, Plaintiff would have to establish each element of its claims and damages to a jury's satisfaction, and then survive Defendants' inevitable appeals. Through this entire period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. And if Defendants' loss causation, damages, or other arguments were accepted, the maximum damages that could be established at trial might have been even lower than Plaintiff's estimate of damages, and, of course, Plaintiff might have lost at the class certification, summary judgment, trial, or appeal stages on some or all of its claims, resulting in a recovery of little or nothing. The Settlement avoids these material risks.

### 4.    The Proposed Method for Distributing Relief Is Effective

As discussed below, the methods of the proposed notice and claims administration process are effective. The claims process includes a standard form that requests the information necessary to calculate claims pursuant to the Plan. The Plan governs how the Claims Administrator will calculate

Settlement Class Members' claims and distribute the Net Settlement Fund to Authorized Claimants, depending on their dates of acquisition or sale of Latch common stock. Plaintiff's damages expert and Lead Counsel prepared the Plan.

### 5.    Attorneys' Fees, Litigation Expenses, and Award to Plaintiff

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Fund, recover litigation expenses in an amount not to exceed $60,000, and seek an award to Plaintiff not to exceed $5,000. The fee request is in line with other settlements approved in this District and Circuit. *See e.g., In re China MediaExpress Holdings, Inc. S'holder Litig.*, No. 11-CV-0804 (VM), 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (awarding attorneys' fees of 33.33% of settlement fund).[7] More, courts in this Circuit routinely grant service awards to lead plaintiffs to compensate them for their time involved in the action, as well as to provide an incentive for lead plaintiffs to remain involved in a case. *See, e.g.,* , 1:16-cv-06728-CM-SDA, *Signet Jewelers*, 2020 WL 4196468, at *19–20; *Martinek v. Amtrust Fin. Servs., Inc.*, No. 19 CIV. 8030 (KPF), 2022 WL 16960903, at *3 (S.D.N.Y. Nov. 16, 2022).

### 6.    The Settling Parties Have Agreed to a Confidential Agreement Regarding Opt-Outs

The Settling Parties have agreed to a standard supplemental agreement providing that, if Settlement Class Members representing a certain number of shares of Latch common stock opt out of the Settlement, Latch shall have the option to terminate the Settlement. Stipulation §10.5. As standard in securities class actions, while the Stipulation acknowledges the supplemental

---

[7] *Tal Educ.,* 2021 WL 5578665, at *12 (request for one-third of a fund "has been approved as reasonable in this Circuit."); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *21 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees award of one-third is "consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries") (citing cases).

agreement, its terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to extract an individual settlement. *See Christine Asia*, 2019 WL 5257534, at *15 ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.").[8]

### 7. The Plan Treats Each Settlement Class Member Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Courts preliminarily approve plans of allocation if the proposed plan has a "reasonable, rational basis." *Citigroup*, 296 F.R.D. at 158. The Plan is fair, reasonable and adequate because it does not treat Plaintiff or any other Settlement Class Member preferentially. *Pasini v. Fishs Eddy, LLC*, No. 1:16-CV-00354-PGG, 2018 WL 6843905, at *2 (S.D.N.Y. Nov. 15, 2018) (approving a class action settlement where "the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual member of the Settlement Class").

The Plan, set out in the Long Notice, explains how the Claims Administrator will distribute the Settlement proceeds among Authorized Claimants. Plaintiff designed the Plan with the help of a damages expert to distribute the Settlement Fund consistent with the claims alleged in this case and loss causation principles. The Plan does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the revelation of the alleged truth. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (if "the purchaser sells the shares quickly before

---

[8] *See also Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684, at *11–*12 (S.D.N.Y. June 29, 2010) (noting side letter agreement, preliminarily approving settlement).

the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Claims Administrator will calculate each claimant's Recognized Loss based on a number of factors, including the number of shares purchased during the Settlement Class Period, and the dates of purchase within the Settlement Class Period. Under the Plan, Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

### 8.  The Remaining *Grinnell* Factors Support Preliminary Approval

*Grinnell* also outlined several factors that are not coextensive with the factors set forth in Rule 23(e)(2), namely: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. These factors support preliminary approval.

While the parties reached agreement to settle this Action before discovery, "[f]ormal discovery is not a prerequisite" before settlement; rather, "the question is whether the parties had adequate information about their claims" before entering into settlement. *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004). Here, the parties had a comprehensive understanding of the potential risks and procedural hurdles facing further litigation of this Action. For example, Plaintiff conducted an extensive investigation and monitoring of the Company before and since filing the Complaint, consulted with investigators who conducted an investigation including by contacting relevant former employees of the Company *inter alia*, and consulted with damages experts to evaluate the Settlement Class's damages and loss causation issues. Plaintiff also conducted substantial legal research in connection with opposing Defendants' motion to dismiss, which is sufficient to ensure that Plaintiff and Lead Counsel are fully informed

about the Action's strengths and weaknesses. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-426 (S.D.N.Y. 2001) ("To approve a proposed settlement … the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement."); *Xuechen Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *7 (S.D.N.Y. Sept. 4, 2014) (finding that this factor supported settlement where "Plaintiff and Lead Counsel have some knowledge of the strengths and weaknesses of Plaintiff's claims and considerable knowledge about the limits on their ability to recover anything for the Class if they win.").

Finally, courts judge the reasonableness of a settlement "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).[9] As discussed above, in light of the risks of continued litigation, the Settlement, which yields approximately 7% of Plaintiff's maximum estimated damages for Latch investors, clearly falls within the range of reasonableness.

The Court should preliminarily approve the Settlement as fair, reasonable, and adequate.

---

[9] *See also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).

**V.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS**

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). The notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27.[10] The requirements of the PSLRA and due process are similar. *See* 15 U.S.C. § 78u-4(a)(7); *see also Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

The proposed Notice program includes: (a) mailing or emailing the Postcard Notice to all Settlement Class Members who can be identified with reasonable effort and/or emailing links to the Long Notice and Proof of Claim; (b) posting the Long Notice, Proof of Claim, Preliminary Approval Order, and Stipulation on a website maintained by SCS[11]; (c) upon request, mailing copies of the Long Notice and/or Proof of Claim; and (d) disseminating the Summary Notice over *GlobeNewswire*. Courts routinely find these methods of notice sufficient.[12]

---

[10] *See also Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'").

[11] Plaintiffs request the Court appoint Strategic Claims Services ("SCS") as the Claims Administrator. SCS has substantial experience administering securities settlements. *See* Heifetz-Li Decl., Ex. C.

[12] *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *see also Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2–3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website).

The Long Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged and how to request exclusion (and clearly states that all those who do not exclude themselves will be bound by the Settlement); (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Proof of Claim; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel and Plaintiff; and (g) the necessary information to examine Court records. The Long Notice also sets forth instructions to securities brokers and other nominee holders for forwarding notices to those persons for whom the nominees held shares in a "street name." This closely tracks a model notice published by the Federal Judicial Center.[13] Furthermore, the PSLRA-mandated disclosures are satisfied as the Long Notice: (a) states the amount of the Settlement on both an aggregate and average per share basis; (b) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (c) states the amount of attorneys' fees and maximum amount of litigation expenses that counsel will seek; and (d) provides the contact information for Claims Administrator and Lead Counsel. 15 U.S.C. § 78u-4(a)(7). The Postcard Notice also includes this information.

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice informs Settlement Class Members that Lead Counsel will apply for attorneys' fees of up to one-third of the Settlement Fund, reimbursement of expenses of up to $60,000 and an award to Plaintiff of up to $5,000, all to be paid from the Settlement Fund. Accordingly, the Notice and the Notice program satisfy the requirements of the Federal Rules of

---

[13] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice.* Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

24

Civil Procedure, the PSLRA, and due process.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiff proposes the following schedule of events leading to the Final Approval Hearing:

| Event | Deadline for Compliance |
|---|---|
| Mailing Postcard Notice | Within 21 days after the entry of the Preliminary Approval Order. (Preliminary Approval Order, ¶12). |
| Posting Stipulation, Long Notice, Summary Notice, and Proof of Claim and Preliminary Approval Order on Claims Administrator's website | Within 21 days after entry of the Preliminary Approval Order. (Preliminary Approval Order, ¶16). |
| Publication of the Summary Notice | Within 10 days after mailing of the Postcard Notice (Preliminary Approval Order, ¶13). |
| Deadline to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | No later than 42 days prior to the Final Approval Hearing. (Preliminary Approval Order, ¶37). |
| Deadline for requests for exclusion, objections to settlement, and oppositions to motion for final approval | No later than 35 days prior to the Final Approval Hearing. (Preliminary Approval Order ¶¶24, 29, 37.b). |
| Deadline for Proofs of Claim. | No later than 30 days prior to the Final Approval Hearing. (Preliminary Approval Order ¶22(a)). |
| Deadline to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | No later than 7 days prior to the Final Approval Hearing. (Preliminary Approval Order ¶37.c). |
| Date for Final Approval Hearing. | Determined by the Court, but at least 100 days after the Preliminary Approval Date. (Preliminary Approval Order ¶7). |

## VII.    CONCLUSION

For the above-stated reasons, Plaintiff requests that the Court: (1) preliminarily certify the Class for the purposes of Settlement; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice; and (4) set a Final Approval Hearing.

Dated: November 12, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ *Jacob A. Goldberg*
Jacob A. Goldberg
Leah Heifetz-Li
101 Greenwood Avenue
Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
       lheifetz@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*