**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SLATER BRENNAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LATCH, INC. f/k/a TS INNOVATION ACQUISITIONS CORP., LUKE SCHOENFELDER, GARTH MITCHELL, and BARRY SCHAEFFER, <br><br> Defendants. | Case No. 1:22-cv-07473-JGK |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES,**
**REIMBURSEMENT OF LITIGATION EXPENSES,**
**AND AWARD TO PLAINTIFF**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL AND PROCEDURAL HISTORY ................................................... 2

III.  ARGUMENT.................................................................................................... 3

    A.    The Common Fund Doctrine Applies, Entitling Lead Counsel to Fees and Reimbursement of Expenses from the Settlement Fund......................................... 3

    B.    The Court Should Award Lead Counsel a Reasonable Percentage of the Settlement Fund ............................................................................................... 4

    C.    The Requested Attorneys' Fees Are Reasonable...................................................... 5

        1.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method ................................................................... 5

        2.    A Lodestar Cross-Check Strongly Supports the Reasonableness of the Attorneys' Fees Request .................................................... 6

    D.    The *Goldberger* Factors Confirm the Requested Fee Is Fair and Reasonable ..................................................................................................... 7

        1.    The Time and Effort Expended Support the Requested Fee....................... 8

        2.    General and Specific Litigation Risks Support the Requested Fee....................................................................................................... 8

        3.    The Complexity of the Action Supports the Fee .................................... 11

        4.    The Quality of Representation Supports the Requested Fee .................... 11

        5.    The Attorneys' Fees Plaintiff Requests in Relation to the Settlement.................................................................................................. 13

        6.    Public Policy Considerations Support the Requested Fee ........................ 14

    E.    This Court Should Approve Reimbursement of Lead Counsel's Expenses as Reasonable and Necessary to the Benefit Obtained......................... 15

    F.    The Court Should Approve a Compensatory Award to Plaintiff.......................... 16

IV.   CONCLUSION................................................................................................ 16

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blum v. Stenson*,
465 U.S. 886 (1984)...................................................................................................... 4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...................................................................................................... 3

*Burns v. FalconStor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ........................................................... 7

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ............................................................................. 10

*Christine Asia Co., Ltd. V. Yun* Ma,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...................................................... 11, 16

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)......................................................................................... 9

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................................... 11, 14

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011)......................................................................... 7

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
925 F.3d 63 (2d Cir. 2019)............................................................................................ 3

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ...................................................................................... 11

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................................................. passim

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................................... 14, 16

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)............................................................ 13

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................................................. 11

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  772 F.3d 125 (2d Cir. 2014)...........................................................................16

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ...........................................................11

*In re BHP Billiton Ltd. Sec. Litig.*,
  2019 WL 1577313 (multiplier of 2.72).............................................................. 7

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y July 16, 2007) .............................................................. 7

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)........................................................................... 10

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................ 14

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................................................ 9

*In re Deutsche Bank AG Sec. Litig.*,
  2020 WL 3162980 (S.D.N.Y. June 11, 2020) ....................................................... 16

*In re Deutsche Telekom AG Sec. Litig.*,
  2005 WL 7984326 (S.D.N.Y. Jun. 14, 2005) ......................................................... 6

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................................... 8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................................... 6, 10, 14, 15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................... 10

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................... 9, 10, 11, 15

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................ 6

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178.................................................................................... 9, 10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003).................................................................. 15

*In re Intercept. Pharm., Inc. Sec. Litig.*,
   2016 WL 10519040 (S.D.N.Y. Sep. 8, 2016) ................................................................ 7

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................... 10, 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................... 4

*In re Qudian Inc. Sec. Litig.*,
   2021 WL 2328437 (S.D.N.Y. June 8, 2021) ............................................................ 16

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................................ 6

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ...................................................................................... 5

*In re Signet Jewelers Limited Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................... 16

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) .............................................................................. 9

*In re Tupperware Brands Corp. Sec. Litig.*,
   2020 WL 3259749 (M.D. Fla. May 27, 2020) ........................................................ 12

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .......................................................... 13

*Johnson v. Brennan*,
   2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ......................................................... 5

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) ...................................................................................... 6

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 7, 14

*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ...................................................................................... 4

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) ................................................................................................... 6

*Rodriguez v. CPI Aerostructures, Inc.*,
   2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023) ........................................................... 4

iv

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................................ 8

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................................................ 9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ............................................................................................... 14

*Vinh Nguyen v. Radient Pharm. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................ 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................... 4, 7

*Yedlowski v. Roka Bioscience, Inc.*,
  2016 WL 6661336 (D.N.J. Nov. 10, 2016) ........................................................... 12

**Statutes**

15 U.S.C. §78u-4(a)(4) ................................................................................................ 2, 16

15 U.S.C. §78u-4(a)(6) ..................................................................................................... 4

**Rules**

Fed R. Civ. P. 23 ............................................................................................................... 1

Fed R. Civ. P. 54(d) .......................................................................................................... 1

Pursuant to Rules 23 and 54(d) of the Federal Rules of Civil Procedure, Lead Plaintiff VP PTC Establishment as Trustee of Gersec Trust ("Lead Plaintiff" or "Plaintiff") respectfully submits this Memorandum of Law in support of its motion for (i) an award of attorneys' fees in the amount of one-third (33 1/3%) of the Settlement Amount ($650,000); (ii) reimbursement of necessary and reasonable litigation expenses of $43,558.99; and (iii) a compensatory award of $5,000 to Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.      INTRODUCTION

The proposed Settlement, providing for a cash payment of $1,950,000 in exchange for resolution of Plaintiff's claims, represents a fair, adequate, and reasonable outcome for the Settlement Class given the risks and expenses of continued litigation, including the risk of a smaller recovery years from now, or no recovery at all. Promptly after final approval, Settlement Class members will receive a cash payment, avoiding further delay, uncertainty, and risk.

Since the inception of this action ("Action"), Lead Counsel, The Rosen Law Firm, P.A., has not received any compensation or reimbursement of out-of-pocket expenses, litigating this case on a contingency basis, even as it zealously represented Plaintiff and the Settlement Class. Plaintiff, therefore, requests that the Court award from the common fund attorneys' fees equal to one-third (33⅓%) of the Settlement Amount, or $650,000, for Lead Counsel's obtaining this favorable result for the Settlement Class. In zealously representing Plaintiff and the Settlement Class, Lead Counsel confronted the material risk of non-payment of attorneys' fees and expenses they advanced.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement filed with the Court on November 12, 2024. (ECF No. 94-1).

An award of one-third of the Settlement Amount in attorneys' fees properly reflects the risks Lead Counsel assumed and the fair, adequate, and reasonable result it achieved on behalf of Plaintiff and the Settlement Class. As of this date, no Settlement Class Member has objected to the attorneys' fee request or the request for reimbursement of expenses. Further, an evaluation of the Second Circuit's *Goldberger* factors supports the attorneys' fee award Plaintiff requests on behalf of Lead Counsel. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). While this Court should award a percentage of the common fund to Lead Counsel, under either that method or the lodestar method for awarding attorneys' fees, the requested fee is reasonable and within the range of attorneys' fees awarded in similar cases. Awarding one-third of the Settlement Fund as attorneys' fees is a fractional multiplier of 0.56 to Plaintiff's Counsel's lodestar. Courts have repeatedly awarded attorneys' fees of one-third in cases where the lodestar was materially higher.

Plaintiff also seeks reimbursement of $44,058.99 of out-of-pocket litigation expenses that Plaintiff's Counsel incurred in prosecuting this Action. These expenses were reasonable and necessary to prosecute and resolve Plaintiff's claims successfully and equate to approximately 2.3% of the Settlement Fund.

Finally, during the course of the Action, Plaintiff's managing director expended time and effort leading the Action on behalf of the Settlement Class. Pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), therefore, Plaintiff requests reimbursement of $5,000. This request is reasonable and in line with awards granted in similar cases.

## II.    FACTUAL AND PROCEDURAL HISTORY

In support of this Motion, Plaintiff submits the Declaration of Jacob A. Goldberg in Support of (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys'

Fees, Reimbursement of Expenses, and Award to Plaintiff ("Goldberg Decl."), incorporating it herein, in its entirety. The Goldberg Decl. is an integral part of this submission. Plaintiff refers to the Goldberg Decl. for a description of the history of the Action, the nature of the claims asserted, the negotiations leading to Settlement, the risks and uncertainties of continued litigation, and a description of the services Lead Counsel provided for the benefit of the Settlement Class.[2]

## III.     ARGUMENT

### A.     The Common Fund Doctrine Applies, Entitling Lead Counsel to Fees and Reimbursement of Expenses from the Settlement Fund

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980);[3] *see also Goldberger*, 209 F.3d at 47 (attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund"); *see also Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019). This achieves equity, preventing "unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47. More, awarding attorneys' fees from a common fund that counsel's efforts create "encourage[s] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.*

Here, Lead Counsel's efforts have conferred a substantial benefit – $1,950,000 in cash – on the Settlement Class, warranting payment of attorneys' fees from the common fund. Accordingly, the Court should award attorneys' fees from the common fund.

---

[2] All citations to "¶ __" and "Ex. __" in this Memorandum refer, respectively, to paragraphs in and Exhibits to the Goldberg Decl.

[3] Unless otherwise noted, citations and quotations are omitted, and emphasis is added.

**B.    The Court Should Award Lead Counsel a Reasonable Percentage of the Settlement Fund**

The preferred method for awarding fees from a common fund is the percentage-of-the-fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class"). The Second Circuit, however, leaves to lower courts whether to award attorneys' fees "under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). While not mandated to do so, district courts in this circuit award fees in class action common-fund cases based on the percentage method.

This Court should apply the percentage-of-the-fund method. It is appropriate in this case, and the preference of district courts, because it "better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work." *See also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014). The percentage method also comports with the PSLRA. 15 U.S.C. §78u-4(a)(6) ("[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"); *see also Rodriguez v. CPI Aerostructures, Inc.* 2023 WL 2184496, at *13 (E.D.N.Y. Feb. 16, 2023) (percentage method "directly aligns the interests of the class and its counsel").

This Court may also evaluate the reasonableness of the percentage of the fund it awards as attorneys' fees by reference to Lead Counsel's lodestar. That is, counsel's lodestar provides a "cross-check" on the reasonableness of the percentage. *Wal-Mart*, 396 F.3d at 123. For this cross-

4

check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 ("[T]he reasonableness of the claimed lodestar can be tested by the court's familiarity with the case."). As a cross-check, this Court "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005); *see also Johnson v. Brennan*, 2011 WL 4357376, at *14–15 (S.D.N.Y. Sept. 16, 2011) (as a cross-check, courts need not scrutinize fee records).

Under either method, this Court should award the attorneys' fees Plaintiff requests as reasonable.

### C.    The Requested Attorneys' Fees Are Reasonable

#### 1.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel's zealous prosecution led to this fair, reasonable, and adequate settlement. Lead Counsel thoroughly investigated the allegations in this Action, drafted and filed two amended complaints, opposed Defendants' motion to dismiss, and engaged in good faith, arm's-length negotiations, leading to the Settlement. ¶33. More, a fee of one-third of the common fund for Lead Counsel's efforts is consistent with the range of percentages district courts in the Second Circuit have awarded in similar common fund cases. *See, e.g.*, *In re Molycorp, Inc. Sec. Litig.*, No. 13-cv-5697 (PAC) (S.D.N.Y. June 15, 2017) (ECF No. 95) (awarding 30% of $1.25 million settlement fund); *In re ForceField Energy Sec. Litig.*, No. 15-cv-03020 (NRB) (S.D.N.Y. Feb. 26, 2018) (ECF No. 252) (awarding 33.33% of $414,500 settlement fund); *Scalfani v. Misonix, Inc.*, No. 16-cv-05218 (ADS) (AKT) (E.D.N.Y. Dec. 16, 2017) (ECF No. 36) (awarding 33.33% of $500,000 settlement fund); *In re China Ceramics Co. Ltd. Sec. Litig.*, No. 14-cv-04100 (VSB) (S.D.N.Y. April 22, 2016) (ECF NO. 42) (awarding 33.33% of $850,000 settlement fund); *Singh v. Tri-Tech Holding, Inc.*, 13-cv-09037 (KMW) (S.D.N.Y. Oct. 16, 2015) (ECF No. 60) (awarding 33.33% of

$975,000 settlement fund); see also *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*24 (S.D.N.Y. Nov. 8, 2010) (recognizing that "awards of 30% or more of a settlement fund are not uncommon in § 10(b) common fund cases") (citing *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (noting that in a study of 287 settlements ranging from less than $1 million to $50 million, "the median turns out to be one-third")). Applying the percentage-of-the-fund method, this Court should, therefore, approve Plaintiff's request for one-third of the Settlement Amount as attorneys' fees to Lead Counsel as reasonable under the circumstances.

2.    **A Lodestar Cross-Check Strongly Supports the Reasonableness of the Attorneys' Fees Request**

Cross-checking the fee Plaintiff requests against Lead Counsel's lodestar supports the reasonableness of the fee request. *See Goldberger*, 209 F.3d at 50. Lead Counsel calculates its lodestar by multiplying the number of hours each attorney or paralegal expends on the litigation by their current reasonable and customary hourly rate, totaling the amounts for all timekeepers.[4]

Lead Counsel (including attorneys, paralegals, and professional support staff) devoted a total of 920.63 hours to the prosecution of this Action, resulting in a lodestar of $1,153,840.42. ¶45; Ex. 2 ¶5. Thus, Plaintiff's Counsel's requested fee of $650,000 represents 0.56 of Plaintiff's Counsel's total lodestar. This fractional fee award is well within the range of those approved and acknowledged as reasonable within this Circuit. *See, e.g., In re Deutsche Telekom AG Sec. Litig.*,

---

[4] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at \*15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

2005 WL 7984326 (S.D.N.Y. Jun. 14, 2005) (approving multiplier of 3.96); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313 (multiplier of 2.72); *In re Intercept. Pharm., Inc. Sec. Litig.*, 2016 WL 10519040 (S.D.N.Y. Sep. 8, 2016) (multiplier of 2.72). Indeed, the multiplier is lower than multipliers commonly accepted as sufficient to justify one-third fees in similar complex class action cases. *See Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 11, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75); *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding a 2.99 multiplier "falls well within the parameters set in this district and elsewhere"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding fee representing a multiplier of 5, which was "not atypical" in similar cases).

While this Court should apply the percentage-of-the-fund method, the fee award that Plaintiff requests – whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar – is well within the range of what courts in this Circuit regularly award in class actions such as this one. The lodestar cross-check supports awarding Lead Counsel attorneys' fees of one-third of the common fund, and this Court should approve it.

**D.    The *Goldberger* Factors Confirm the Requested Fee Is Fair and Reasonable**

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case, including (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and

(6) public policy considerations. *Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

### 1.    The Time and Effort Expended Support the Requested Fee

The time and effort Lead Counsel expended in prosecuting this Action and achieving the Settlement support the attorneys' fees Plaintiff requests. Lead Counsel, among other things, investigated and analyzed the case, drafted two amended complaints, opposed Defendants' motion to dismiss, engaged in good faith, arm's-length negotiations, leading to the Settlement, prepared Plaintiff's Motion for Preliminary Approval of Class Action Settlement and related documents, worked with consulting experts to prepare the Plan of Allocation, oversaw the notice process that the Court approved, and drafted the motion for final approval. ¶33.

More, the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Material additional hours and resources will be necessary to respond to Settlement Class Members' inquiries and conclude the claims process with a motion to distribute the Net Settlement Fund to Settlement Class Members. Lead Counsel will not seek additional compensation for this work. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (awarding 33% as attorneys' fees, considering time and effort expended thus far and remaining work to oversee claims process and distribution), *aff'd,* 674 F. App'x 37 (2d Cir. 2016).

The time and effort Lead Counsel devoted to the Action secured the $1,950,000 Settlement, supporting the reasonableness of the fee request.

### 2.    General and Specific Litigation Risks Support the Requested Fee

"[T]he risk of success [is] 'perhaps the foremost' factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago

recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'[L]itigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55).

Courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010), and that "in evaluating the settlement of a securities class action, federal courts, including this court, have long recognized that such litigation is notably difficult and notoriously uncertain"). *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012 (Buchwald, J.) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (internal quotation marks omitted).[5] This case was no exception. From the outset of the Action, Lead Counsel understood that it was embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever receiving compensation for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case …

---

[5] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

9

." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expenses since this case began …" *Flag Telecom*, 2010 WL 4537550, at *27. Lead Counsel's commitment was significant and would have been unrewarded and unreimbursed had Lead Counsel failed to obtain a recovery.

While Lead Counsel believes that Plaintiff's claims are meritorious, there remain substantial risks in the litigation. As a result, Plaintiff's ability to defeat Defendants' motion to dismiss and future summary judgment motions, to secure class certification, to succeed at trial, to obtain and collect a substantial judgment, and to prevail on any appeals is far from certain. *See In re IMAX*, 283 F.R.D. at 189 (securities class actions are "notably difficult and notoriously uncertain"). The Settlement avoids these material risks.

With respect to damages specifically, proving damages presents a significant risk in securities class actions. "Calculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion ....'" *Global Crossing*, 225 F.R.D. at 459; *see also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (in securities class actions, the "complexities of calculating damages increase geometrically"). "There is the undeniable risk that a 'jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses.'" *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). Even if Plaintiff

overcame these risks and a jury awarded the full measure of damages, sit would still face the risk of an adverse decision on post-trial motions, or reversal on appeal.[6]

The risks Lead Counsel assumed of failing to establish liability, class certification, or damages supports the attorneys' fee award Plaintiffs request.

### 3.    The Complexity of the Action Supports the Fee

Courts recognize that securities class actions are "notorious[ly] complex[]." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006), a factor that supports an award of attorneys' fees. This case is no exception. As noted above and in the Goldberg Decl., this case raised difficult questions concerning liability, class certification, and damages. ¶¶35-42. Plaintiff would have had to prevail against motions to dismiss and for summary judgment, on a motion for class certification, and then at trial and on appeal. Each step would likely have been protracted and difficult. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Quality of Representation Supports the Requested Fee

"The quality of    Securities    Lead    Counsel's    representation is    evidenced    by the recovery obtained for the Securities Class...." *Christine Asia Co., Ltd. V. Yun* Ma, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (quoting *Global Crossing*, 225 F.R.D. at 467). Here, the Settlement provides the Settlement Class with a guaranteed cash payment of $1,950,000. This is a fair, reasonable, and adequate result. Plaintiff's damages expert estimates that if Plaintiff had fully

---

[6] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict of $2.46 billion on loss causation and damages grounds, remanding for a new trial on these issues); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law following jury verdict in plaintiffs' favor), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

prevailed on its claims on a motion to dismiss, at summary judgment, and after a jury trial, and if the Court had certified a litigation class for the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiff's per share damages calculation, and if beneficial owners of all shares that Plaintiff's expert estimates were damaged made claims—*i.e.*, Plaintiff's best-case scenario—the total maximum damages potentially available to the Settlement Class— would be approximately $27.9 million. ¶31. Under this scenario, the Settlement represents a recovery of 7% of the Settlement Class's best-case, maximum recoverable damages. *Id.* Defendants' experts would certainly have asserted at trial that the per share damages Plaintiff and members of the Settlement Class suffered, if any, were materially lower than the amount Plaintiff estimates.

This result is favorable compared to settlements in other securities cases. According to NERA Economic Consulting Research, for cases that settled in 2024, the median ratio of settlement to investor losses was only 1.2%. ¶31; Goldberg Decl., Ex. 6.

Lead Counsel's commitment to providing Plaintiff and the Settlement Class with the best possible representation, together with their substantial experience in securities class actions, provided leverage necessary to negotiate the Settlement. *See* Goldberg Decl. Ex. 4 (Rosen Law Firm Resume). Courts around the country have recognized the quality of Rosen Law's work. *See, e.g., Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *In re Tupperware Brands Corp. Sec. Litig.*, 2020 WL 3259749, at *2–3 (M.D. Fla. May 27, 2020), *report and recommendation adopted sub nom. In Re Tupperware Brands Corp. Sec. Litig.*, No. 620CV357ORL31GJK, 2020 WL 3259086 (M.D. Fla. June 16, 2020) (recognizing that Rosen Law is "well-credentialed" with "significant securities litigation experience"); *Vinh*

*Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at \*9 (C.D. Cal. May 6, 2014) (The Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation"). Lead Counsel's experience and reputation contributed to this successful resolution.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at \*7 (S.D.N.Y. Nov. 7, 2007) (fee award supported by fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at \*3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by accomplished attorneys from Latham & Watkins LLP, with experienced, skilled securities practitioners who vigorously represented the interests of their clients. ¶44.

Notwithstanding formidable opposition, Lead Counsel zealously prosecuted the Action vigorously, enabling them to achieve the favorable Settlement and supporting the attorneys' fees Plaintiff requests.

### 5. The Attorneys' Fees Plaintiff Requests in Relation to the Settlement

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at \*3. As discussed in detail in Section III.C.1, *supra*, the requested one-third fee is

consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6. Public Policy Considerations Support the Requested Fee

In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.

As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (Private securities actions promote securities laws' objectives, but "could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class.").

The integrity of the markets depends on companies' and their executives' complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here. *See In re China*

14

*Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("public policy supports granting attorneys' fees 'that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC'").

### E. This Court Should Approve Reimbursement of Lead Counsel's Expenses as Reasonable and Necessary to the Benefit Obtained

Lead Counsel also requests reimbursement of $44,058.99 in expenses incurred while prosecuting the Action. *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").

Most of the expenses Lead Counsel advanced were for fees to investigators, financial experts, and press releases and notice to class members. Goldberg Decl., Ex. 2 ¶6. These expenses were essential to Plaintiff's success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. As such, the Court should approve their reimbursement. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."). Additionally, the amount requested is below the $60,000 limit disclosed in the Long Notice. Goldberg Decl., Ex. 1, Ex. A at 2.

For those reasons, the Court should award $43,558.99 from the common fund for unreimbursed expenses.

15

### F. The Court Should Approve a Compensatory Award to Plaintiff

Lead Counsel respectfully requests an award of $5,000 to Plaintiff for its time and effort spent prosecuting the Action. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Courts in this Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages…." *Christine Asia*, 2019 WL 5257534, at *20 (approving request for award to lead plaintiffs) (quoting *Hicks*, 2005 WL 2757792, at *10; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expenses and costs to lead plaintiffs totaling $453,000). *See also Marsh & McLennan*, 2009 WL 5178546, at *21 (approving $215,000 total award to two lead plaintiffs); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *2 (S.D.N.Y. June 11, 2020) (awarding $10,000 to each class representative); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class"); *In re Signet Jewelers Limited Sec. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff). Lead Plaintiff's director, Michael Higgins, worked with Lead Counsel actively throughout the litigation of this action. Ex. 3 ¶4. The requested $5,000 award will fairly compensate Lead Plaintiff for its time and leadership.

### IV. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (a) award Lead Counsel reasonable attorneys' fees in the total amount of one-third of the Settlement Amount

16

(or $650,000); (b) reimburse Lead Counsel for expenses and costs in the amount of $43,558.99;

and (c) reimburse Lead Plaintiff for its time and effort spent on the Action in the amount of $5,000.

Dated: April 16, 2025                                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ *Jacob A. Goldberg*
Jacob A. Goldberg
Leah Heifetz-Li
101 Greenwood Avenue
Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
         lheifetz@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

**SCHALL LAW FIRM**
Brian Schall, Esq.
2049 Century Park E #2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Email: brian@schallfirm.com

*Additional Counsel*