**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SLATER BRENNAN, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>     v.<br><br>LATCH, INC. f/k/a TS INNOVATION ACQUISITIONS CORP., LUKE SCHOENFELDER, GARTH MITCHELL, and BARRY SCHAEFFER,<br><br>     Defendants. | Case No. 1:22-cv-07473-JGK |

**DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFF**

I, Jacob A. Goldberg, declare the following to the best of my knowledge pursuant to 28 U.S.C. §1746: [1]

1.    I am an attorney admitted to practice law in New York and before this Court. I am a partner of the law firm of The Rosen Law Firm, P.A. ("Rosen Law"), court-appointed Lead Counsel for Lead Plaintiff Lead Plaintiff VP PTC Establishment as Trustee of Gersec Trust ("Lead Plaintiff" or "Plaintiff") and the Settlement Class in this litigation ("Action"). I have personal knowledge of the matters set forth herein, and, if called upon, I could and would completely testify thereto.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated and filed November 12, 2024. (ECF No. 94-1.)

1

2.      I submit this Declaration in support of Plaintiff's Motions, filed concurrently herewith, for: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiff. I set forth herein relevant facts supporting both that the Settlement is fair, reasonable, and adequate and that Plaintiff's request for attorneys' fees, reimbursement of expenses, and service awards are reasonable.

3.      The Settlement provides for a cash payment by and on behalf of Defendants[2] in the amount of $1,950,000 in exchange for full releases of Plaintiff's claims, completely resolving the Action.

4.      On January 17, 2025, the Court entered an order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for the purposes of settlement, and approving the form and manner of providing notice to potential Settlement Class Members ("Preliminary Approval Order," ECF No. 100).

5.      Plaintiff now seeks final approval of the Settlement, as well as an award of attorneys' fees to The Rosen Law Firm, P.A. of one-third of the Settlement Fund (or $650,000), and reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $44,058.99, and a service award to Plaintiff of $5,000.

6.      Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Margery Craig Concerning: (A) Mailing/Emailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl.").

---

[2] "Defendants" are Latch, Inc. ("Latch" or "Company"), Luke Schoenfelder, Garth Mitchell, and Barry Schaeffer (together, "Defendants").

7.     Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Declaration of Jacob A. Goldberg on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Goldberg Fee Decl.").

8.     Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the Declaration of Michael Higgins, Director of Lead Plaintiff ("Higgins Decl.")

9.     Attached hereto as <u>Exhibit 4</u> is a true and correct copy of the firm resume of The Rosen Law Firm, P.A. ("Rosen Law Firm Resume").

10.     Attached as <u>Exhibit 5</u> is a true and correct copy of peer firm billing rates ("Peer Firms Billing Rates").

11.     Attached as <u>Exhibit 6</u> is a true and correct copy of the Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review, published by NERA on January 22, 2025 ("NERA Report").

**Procedural History**

12.     This Action commenced on August 31, 2022, with the filing of a putative class action asserting securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 USC §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). (ECF No. 1), in a case captioned *Brennan v. Latch, Inc., et. al.*, 3:23-cv-01640 (ECF No. 1).

13.     On January 17, 2023, the Court appointed Plaintiff as Lead Plaintiff, and approved Plaintiff's selection of The Rosen Law Firm, P.A., as lead counsel. (ECF No. 44).

14.     Upon its appointment, Plaintiff, through Lead Counsel, further investigated the claims in this action by, among other things, reviewing public information about Latch such as United States Securities and Exchange Commission ("SEC") filings, press releases, news articles,

3

transcripts, and other public statements issued by or concerning Defendants. We also reviewed research reports and notes of financial analysts concerning Latch's business and financial performance. With the help of expert consultants, we performed economic, pricing, and damages analyses. Most importantly, we retained an investigator to locate witnesses, and spoke with witnesses who had knowledge of Latch's finance function.

15.    On October 24, 2023, Plaintiff filed the Amended Class Action Complaint. (ECF No. 55).

16.    On November 14, 2023, the Court ordered that Defendants would answer, move to dismiss, or otherwise respond to the Amended Complaint by November 21, 2023. If Defendants moved to dismiss, Lead Plaintiff would either file an opposition to Defendants' motion or file another amended complaint in response by December 5, 2023. (ECF No. 61). On November 21, 2023, Defendants moved to dismiss the Amended Complaint. (ECF No. 62-66).

17.    On December 5, 2023, Lead Plaintiff filed the Second Amended Consolidated Complaint (the operative "Complaint"), asserting claims against Latch, Mr. Schoenfelder, Mr. Mitchell, and Mr. Schaeffer under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder, and against the individual defendants under Section 20(a) of the Exchange Act. (ECF No. 69).

18.    On December 28, 2023, Defendants moved to dismiss the Complaint. (ECF No. 72-76). On January 18, 2024, Lead Plaintiff opposed Defendants' motion to dismiss the Complaint. (ECF No. 77-78). On February 1, 2024, Defendants filed their reply in further support of their motion to dismiss the Complaint. (ECF No. 81-82). On August 9, 2024, the Court ordered the parties to appear for oral argument on September 13, 2024. (ECF No. 85). On September 6, 2024,

the Court granted a request from the parties to continue oral argument, adjourning argument to September 23, 2024. (ECF No. 87).

19.     After Plaintiff filed the Complaint, the parties engaged in arm's-length discussions concerning a mediation towards the resolution of this action. While the parties did not agree to mediate at that time, in August 2024, shortly before the Court scheduled oral argument on Defendants' motion to dismiss, the parties reengaged in discussions, which then became direct arm's-length negotiations. The parties reached an agreement in principle on September 11, 2024, and notified the Court on September 16, 2024. (ECF No. 88).

20.     On September 19, 2024, the Court withdrew Defendants' pending motion to dismiss without prejudice and granted the parties' request to stay all proceedings in the Action, pending its consideration of Plaintiff's anticipated motion for preliminary approval of the Settlement. (ECF No. 90). The parties signed a settlement term sheet on September 24, 2024.

21.     On November 12, 2024, Plaintiff moved for preliminary approval of the Parties' proposed settlement and notice program. (ECF No. 92-94, 96-97.)

22.     On January 16, 2025, the Court held a hearing on Plaintiff's motion for preliminary approval.

23.     On January 17, 2025, the Court preliminarily approved the settlement and scheduled a final settlement hearing for May 28, 2025. (ECF No. 100.)

**Nature of the Allegations in the Complaint**

24.     Latch is an enterprise technology company serving multifamily residential properties by selling access control devices that are installed in or deployed at multi-family buildings. The Complaint alleges that, during the Class Period, Defendants made false and misleading statements and material omissions about Latch's financial condition, materially

overstating revenue in violation of Generally Accepted Accounting Principles ("GAAP") and misleading investors concerning the Company's internal controls as well as key non-GAAP business metrics. Latch admitted errors and possible irregularities with respect to its revenue recognition practices in its financial statements for 2019 through the first quarter of 2022, which it determined to restate once its investigation into these issues concluded. Latch also announced possible deficiencies in the Company's internal controls over financial reporting during these periods. Latch did not restate its financial statements by the deadline NASDAQ had set, and thus would not regain compliance with NASDAQ's listing rules and, as a result, was delisted by NASDAQ. Following the disclosure of Latch's financial and accounting errors, the value of the Company's common stock materially declined.

**Settlement Negotiations and Terms**

25.     After Plaintiff filed the Complaint, the parties initially engaged in arm's-length discussions concerning a mediation towards the class-wide resolution of the action. Those discussions, however, did not result in a mediation.

26.     In August 2024, shortly before the Court scheduled oral argument on Defendants' motion to dismiss, the parties reengaged in discussions, which became direct arm's-length negotiations towards a settlement.

27.     Negotiations began with an initial demand from Plaintiff. The Parties then negotiated for approximately five weeks before agreeing on September 11, 2025 to provide a full release of all claims against all Defendants from all Settlement Class Members that do not exclude themselves in exchange for $1,950,000. On September 16, 2024, the Parties alerted the Court to the Settlement in principle. (ECF No. 88).

6

28.    On September 19, 2024, the Court withdrew Defendants' pending motion to dismiss without prejudice and granted the parties' request to stay all proceedings in the Action, pending its consideration of Plaintiff's anticipated motion for preliminary approval of the Settlement. (ECF No. 90).

29.    The parties signed a settlement term sheet on September 24, 2024.

30.    On November 12, 2024, Plaintiff moved the Court for the entry of an order preliminarily approving the proposed settlement and authorizing notice to the Settlement Class. (ECF No. 92-94, 96-97). On January 17, 2025, the Court entered the Preliminary Approval Order. (ECF No. 100).

31.    The Settlement provides for a cash payment of $1,950,000 to pay the Settlement Class's claims. Under the best-case scenario—assuming Plaintiff overcome all the obstacles noted below and Defendants do not prevail on any of their arguments—Plaintiff's economic expert concluded that the maximum potentially recoverable class wide statutory damages are $27.9 million. The $1,950,000 Settlement therefore represents 7% of the Settlement Class's best-case, maximum recoverable damages.[3] If the Court grants final approval of the Settlement, Plaintiff and all Settlement Class Members who remain in the Class will forever release Defendants from all claims that were alleged or could have been alleged in this Action.

32.    Requests for exclusion and objections to the Settlement must be received by April 23, 2025. To date, neither the Claims Administrator nor Lead Counsel has received any objections to any aspect of the Settlement, including the Settlement, itself, the Settlement Class, the Plan of Allocation, or payment of attorneys' fees and expenses from the Settlement Fund. Ex. 1 ¶15. The

---

[3] This percentage recovery exceeds the 1.2% median settlement value in 2024 for all securities class actions.  *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (January 22, 2025) (Exhibit 6 hereto).

Claims Administrator has also not received any requests for exclusion. *Id.* ¶14. The Long Notice, as the Court approved it in the Preliminary Approval Order, describes the Plan of Allocation. *See* ECF No. 94-2; *see also* Ex. 1, Ex. A, at 11-15. With Court-appointed Claims Administrator SCS, Rosen Law formulated the Plan of Allocation for distributing the Settlement Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the alleged revelation of the truth. The Plan of Allocation establishes a formula that determines Authorized Claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Plaintiffs).

### Complexity, Expense and Likely Duration of the Litigation

33.    Over the course of this litigation, on behalf of Plaintiff and the Settlement Class, Rosen Law devoted significant time and effort to prosecuting this action, including, among other work:

- investigating and analyzing the allegations in preparing two amended complaint in the Action, including, among other means:

  o   reviewing press releases, news articles, earnings call transcripts, and other public statements issued by or concerning Defendants;

  o   researching reports issued by financial analysts concerning Latch's business and financial performance;

  o   extensive review and analyses of Defendants' filings with the SEC;

  o   engaging a damages consulting expert to analyze damages;

  o   retaining a private investigator to locate witnesses and conduct interviews; and

o   interviewing witnesses with personal knowledge of the facts alleged in the Complaint.

- drafting two amended complaints;

- opposing Defendants' motion to dismiss;

- engaging in good faith, arm's-length negotiations, leading to the Settlement;

- preparing Plaintiff's Motion for Preliminary Approval of Class Action Settlement and related documents;

- working with consulting experts to prepare the Plan of Allocation;

- overseeing the notice process that the Court approved; and

- drafting Plaintiff's Motion for Final Approval of Class Action Settlement and related documents.

34.     Thus, before entering into the Settlement, Lead Counsel and Plaintiff had a thorough understanding of the strengths and weaknesses of their case.

**Risks of Continued Litigation**

35.     Without a Settlement, Plaintiff faces protracted and expensive litigation that could drag the Action on for years, with no guarantee of matching or exceeding the recovery provided by the Settlement.

36.     While Plaintiff and Lead Counsel believe that Plaintiff's claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving and collecting a greater recovery. The Settlement provides for a cash payment of $1,950,000. This case presents material risks that Plaintiff and the Settlement Class might recover nothing at all— or substantially less than the Settlement Amount—if the litigation proceeds.

37.     First, the Parties agreed to settle the case while Defendants' motion to dismiss was pending. Plaintiff faced risk that the Court would grant the motion either in part, thereby reducing the scope of Plaintiff's claims, or in its entirety. Defendants denied that they made any actionably false and misleading statements, or did so with the requisite fraudulent intent, and argued that Plaintiff would be unable to prove damages as a result of the allegedly fraudulent conduct. Defendants further argued that the corrective disclosures that caused Latch's stock price to drop were not reflected in Defendants' alleged misstatements. The Court could have agreed with some or all of Defendants' argument.

38.     Second, even if the Action survived Defendants' motion to dismiss, while Plaintiff believes that the Settlement Class meets the requirements for certification, Defendants would certainly oppose class certification for litigation purposes, and there is a risk the Court would deny such certification.

39.     Third, even if the Court certified the class, Plaintiff would still face substantial challenges in developing facts to survive summary judgment.

40.     Fourth, even if Plaintiff obtained class certification and withstood summary judgment and pre-trial motions, it would have to prepare for and obtain a verdict in a lengthy jury trial on liability, litigate post-trial motions and bifurcated trials on damages, and withstand lengthy appeals.

41.     Establishing damages in cases such as this one is always difficult, and particularly here, where Defendants argue that the purported corrective disclosures that caused Latch's stock price to drop were not reflected in Defendants' alleged misstatements, and thus would likely have argued that the Settlement Class's estimated damages were significantly lower than Plaintiff claims, or non-existent. Disentangling the market's reaction to various pieces of news is

complicated and requires intricate expert analysis and testimony. Defendants would oppose any expert Plaintiff retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts. If at any of these stages the Court or jury found Plaintiff's damages expert and theory legally or factually insufficient, Plaintiff would have spent much more time and money to end up with less than the $1,950,000 recovery, or nothing.

42.     Even if Plaintiff could recover a larger judgment after a trial, which would be far from certain given the risks discussed herein, the additional time that it would take to litigate this case through trial, post-trial motions, and the appellate process could deny the Settlement Class any recovery for years, further reducing the value of such a judgment.

43.     The Settlement eliminates the expense and delay of continued litigation and the risk that the Settlement Class could receive a lower or no recovery.

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel**

44.     Lead Counsel are experienced attorneys with a track record of successfully litigating securities class actions throughout the country. *See* Ex. 4, Rosen Law Firm Resume. Lead Counsel negotiated with high caliber opposing counsel for Defendants, Latham & Watkins LLP, with deep experience defending similar actions. Given these factors, Lead Counsel believes that the Settlement is fair, adequate, and reasonable and urges this Court to approve it.

**Lead Counsel's Fee Request Is Justified**

45.     Lead Counsel have worked diligently to achieve the Settlement, expending 920.63 hours for a lodestar value of $1,153,476.38. Ex. 2 ¶5. The attorneys' fee Plaintiff requests is a fractional 0.56 multiplier to Lead Counsel's lodestar. The rates that Lead Counsel billed for its

attorneys are comparable to those of peer plaintiff and defense firms litigating similar matters. *See* Ex. 5, Peer Firms Billing Rates.

46.    Lead Counsel spent a total of $44,058.99 in unreimbursed expenses in connection with the prosecution of this Action. Ex. 2 ¶6. To date, Lead Counsel have received no compensation for their efforts on behalf of Plaintiff and the Settlement Class.

47.    From the outset, Lead Counsel embarked on a complex, expensive, and potentially lengthy litigation with no guarantee of being compensated for the investment of time and resources on behalf of Plaintiff and the Settlement Class. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the action and that funds were available to compensate staff and to cover the expenses the case would require.

48.    The hourly rates that Lead Counsel used to arrive at its lodestar calculation are current. Ex. 2 ¶5.

49.    Lead Counsel's work will not end with the final approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the May 28, 2025, Settlement Hearing, overseeing the claims process, and distributing the Settlement Fund to Settlement Class Members.

**The Requested Award to Plaintiff Is Justified**

50.    Plaintiff has spent time and effort leading this action on behalf of the Settlement Class. Ex. 3. Plaintiff requests an amount of $5,000 to compensate for this time and as an incentive for representative plaintiffs to come forward in cases in the future.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of April, 2025, in Jenkintown, Pennsylvania.

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg

12