**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SLATER BRENNAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LATCH, INC. f/k/a TS INNOVATION ACQUISITIONS CORP., LUKE SCHOENFELDER, GARTH MITCHELL, and BARRY SCHAEFFER, <br><br> Defendants. | No. 1:22-cv-07473-JGK |

**DECLARATION OF MARGERY CRAIG CONCERNING**
**THE RESULTS OF THE CLAIMS ADMINISTRATION PROCESS**

I, Margery Craig, declare as follows:

1.      I am a Project Manager at Strategic Claims Services ("SCS"), a nationally recognized class action administration firm.  I have over seventeen years of experience specializing in the administration of class action cases.  SCS was established in April 1999 and has administered over five hundred and fifty (550) class action cases since its inception.  I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts set forth in this declaration, and if called on to do so, I could and would testify competently thereto.

**UPDATE ON THE NOTIFICATION PROCESS**

2.      Pursuant to the Court's Order Preliminarily Approving Proposed Settlement, dated January 17, 2025 (ECF No. 100, the "Preliminary Approval Order"), SCS was appointed and approved as the Claims Administrator and Escrow Agent to supervise and administer the notice procedure as well as the processing of claims in connection with the above-captioned action.[1]

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated November 12, 2024 (ECF No. 94-1, the "Stipulation").

3.      As noted in the Declaration of Margery Craig Concerning: (A) Mailing/Emailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated April 16, 2025 and the Supplemental Declaration of Margery Craig Concerning: (A) Mailing/Emailing of the Postcard Notice; (B) Report on Requests for Exclusion and Objections; and (C) Claims Received To Date, dated May 21, 2025 (ECF Nos. 109-1 and 110-1, the "Mailing Declarations"), 53,100 Postcard Notices (either via mailed or emailed) have been sent to potential Settlement Class Members.  Since the Mailing Declarations were filed, there have been no additional Postcard Notice disseminations.

## UPDATE ON TOLL-FREE PHONE LINE

4.      The Mailing Declarations noted that SCS maintains a toll-free telephone number (1-866-274-4004) for Settlement Class Members to call and obtain information about the Settlement. SCS will continue to promptly respond to each telephone inquiry from Settlement Class Members through the distribution process.

## UPDATE ON SETTLEMENT WEBPAGE

5.      The Mailing Declarations also noted that on February 3, 2025, SCS established a page on its at www.strategicclaims.net/latch. The webpage is accessible 24 hours a day, 7 days a week. The webpage contains a current status; the case deadlines; the online claim filing link; and important case documents. SCS will continue to maintain and update the webpage with relevant case information through the distribution process. To date, the settlement website has received 11,021 pageviews from 2,580 unique users.

2

**STATUS OF CLAIMS PROCESSING**

6.      Through July 1, 2025, 17,642 Claim Forms (hereafter referred to as "claims") were submitted in connection with this Settlement.[2]   SCS has carefully reviewed, analyzed, and processed all of these claims, and has responded to all claimant inquiries regarding the action, the Settlement and the procedures for filling out the Claim Forms.  SCS has also been in close contact with Lead Counsel to review the administration process.  SCS's Report of Claims Administrator is annexed hereto as **Exhibit A** and described below.

7.      The annexed Report of Claims Administrator sets forth the final status of claims submitted to SCS as follows:

a.      PROPERLY DOCUMENTED CLAIMS:    SCS   has   identified   8,014[3] properly documented valid claims.  These valid claims represent Recognized Losses of $20,451,507.50[4].  These valid claims were calculated in the manner set forth in the Court-approved Plan of Allocation of the Net Settlement Amount ("Plan of Allocation"), included in the Notice.  **Exhibit B-1** is a spreadsheet of the 7,999 properly documented and timely submitted claims.  **Exhibit B-2** is a spreadsheet of the 15 claims submitted after the Court-approved claims filing deadline, April 28, 2025, but on or before July 1, 2025.

b.      INADEQUATELY DOCUMENTED CLAIMS:  SCS initially identified 21 inadequately documented claims.  SCS mailed or emailed inadequacy notices to each of these claimants, advising them of the nature of their inadequacy and providing them an

---

[2] SCS has not processed any claims filed after July 1, 2025, or any responses to rejections received after November 21, 2025 due to extreme lateness and because their inclusion would have delayed the finalization of the administration.

[3] This number includes 7,999 timely filed valid claims and 15 late but otherwise valid claims.

[4] This amount includes Recognized losses for timely filed valid claims of $20,433,171.67 and Recognized Losses for the late (but otherwise valid) claims of $18,335.83.

opportunity to cure. A sample inadequacy notice is annexed hereto as **Exhibit C**. Among these 21 deficient claims, five have been successfully cured and are considered valid. The remaining 16 inadequate claimants either did not respond to the inadequacy notice or responded with inadequate documentation and were sent a rejection notice setting forth the reason for their inadequacy. *See* **Exhibit D** for a list of the inadequate, rejected claimants. To date, none of the 16 inadequate claimants has objected to or contested this determination. One of the 16 inadequately documented claims, claim 461, had a large number of shares noted on their Claim Form.

(i) Claim 461 submitted a claim through SCS's online claim filing system. The individual noted on the Claim Form that they purchased a total of 1,050,077 shares of Latch, Inc. ("Latch") common stock during the Class Period between June 7, 2021 and August 1, 2023, inclusive. Of the 1,050,077 shares, the potential Settlement Class Member provided documentation that they purchased 133,312 shares of Latch common stock in September 2022. The potential Settlement Class Member did not provide purchase documentation for the additional 916,765 shares that were noted on the Claim Form as purchased during the Class Period. The individual also did not provide documentation for the number shares held as of the opening of trading on June 7, 2021, sales during the period from June 7, 2021 through October 30, 2023, inclusive, or the total number of Latch common stock held as of the close of trading on October 30, 2023. SCS notified the potential Settlement Class Member of these deficiencies by mail in letters dated July 30, 2025 and August 25, 2025. SCS also followed up with the potential Settlement Class Member with emails on May 30, 2025, September 12, 2025,

4

September 19, 2025, September 24, 2025, and October 21, 2025. SCS also contacted the potential Settlement Class Member via phone on September 12, 2025, September 24, 2025, and October 21, 2025. SCS then mailed a certified letter with a return receipt through the United States Postal Service ("USPS'). To date, the potential Settlement Class Member has not responded to SCS repeated attempts to obtain the documentation required to process their Claim Form. **Exhibit E** is a copy of the claim, ineligibility notices, emails, and the certified letter with the USPS confirmation of delivery.

c.    INELIGIBLE CLAIMS:  In addition to the 16 claims discussed above in paragraph 7.b., SCS has identified 9,612 claims which we recommend for complete rejection. Included in this category are: (i) claims with no Recognized Losses; (ii) claims with common stock of Latch that were not purchased, but were received, granted by gift, inheritance, or operation of law; (iii) claims with shares sold short; (iv) claims with common stock of Latch that were purchased outside of the Class Period; (v) claims withdrawn by the filing entity; (vi) duplicate claims filed; and (vii) a fraudulent claim filed. *See* **Exhibit F** for a list of these ineligible claims. We have communicated with these 9,612 claimants and advised them of our final determination. A sample ineligibility notice is annexed hereto as **Exhibit G**. To date, two of these ineligible claimants have contested SCS' final determination of ineligibility.

(i)    Claim 467 purchased 900 shares of TS Innovation Acquisitions Corp. prior to the Business Combination with Latch on June 4, 2021. The name, symbol, and CUSIP number change became effective on June 7, 2021. The 900 shares were purchased prior to Class Period and are ineligible. Pursuant

to the Plan of Allocation, shares of Latch common stock were to be purchased between June 7, 2021 and August 14, 2022, inclusive.  **Exhibit H** is a copy of the claim, ineligibility notice, and response.

(ii)    Claim 534 purchased 20 shares of TS Innovation Acquisitions Corp. prior to the Business Combination with Latch on June 4, 2021. The name, symbol, and CUSIP number change became effective on June 7, 2021. The 20 shares were purchased prior to Class Period and are ineligible.  Pursuant to the Plan of Allocation, shares of Latch common stock were to be purchased between June 7, 2021 and August 14, 2022, inclusive.  **Exhibit I** is a copy of the claim, ineligibility notice, and response.

8.    In anticipation of completing this administration, SCS respectfully recommends that the Court reject as untimely any claims received after July 1, 2025 and any responses to deficiency and/or rejection notices received after November 21, 2025.  SCS also respectfully recommends that the Court reject claims 461, 467 and 534 in light of SCS' determination.

9.    Should the Court approve SCS's administrative determinations concerning the claims recommended for acceptance and rejection, SCS recommends the following:

(a)    Per the Plan of Allocation, each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's Recognized Loss bears to the total of the Recognized Losses of all 7,999 Authorized Claimants and 15 late claims, if the late claims are deemed valid by the Court.  The balance of the Net Settlement Fund (less amounts to be withheld for potential tax liabilities and related fees and expenses) shall be distributed to Authorized Claimants.  No distribution will be made on a claim where the potential distribution amount is less than ten dollars ($10.00) in cash.

(b)      In order to encourage Authorized Claimants to cash their distribution checks promptly, and to avoid or reduce future expenses relating to unpaid distribution checks, all checks should bear the notation, "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." Similarly, all other checks issued in connection with subsequent distributions shall bear the same notation.

(c)      Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement unless good cause is shown.

(d)      If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used; (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants who would receive at least a $10.00 payment; (ii) second, to pay any additional Administration Costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs of fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. If six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds shall remain in the Net Settlement Fund after the Claim Administrator has made reasonable and diligent efforts to have Authorized

Claimants who are entitled to participate in this Settlement cash their checks, any funds remaining in the Net Settlement Fund shall be donated to a non-profit charitable organization(s) selected by Lead Counsel and approved by the Court.

(e) SCS respectfully recommends the Court order that: All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members and other Claimants, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims Administrator and its agents/employees, the Escrow Agent, or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement, beyond the amounts allocated to them pursuant to the terms of the Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Distribution Order.

(f) SCS respectfully recommends the Court order that: (i) in no less than one (1) year after the distribution of the Net Settlement Fund, SCS may destroy the paper copies of the Claim Forms and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, SCS may destroy the electronic copies of the Claim Forms and all supporting documentation. This is the customary document retention period SCS uses to prevent additional costs to the Settlement Class for storage expenses and related fees.

9

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 10th day of December 2025, in Media, Pennsylvania.

_____
Margery Craig